In the
United States Court of Appeals
For the Seventh Circuit

No. 00-2316

United States of America,

Plaintiff-Appellee,

v.

Joseph D. Ramsey,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Illinois.
No. 99-CR-40096-JPG--J. Phil Gilbert, Judge.

Argued September 27, 2000--Decided January 18, 2001

Before Posner, Coffey, and Kanne, Circuit Judges.

KANNE, Circuit Judge.  On February 3, 2000, Joseph Ramsey pleaded guilty to three counts of distribution of crack cocaine in violation of 21 U.S.C. sec. 841(a)(1). The Pre-Sentence Investigation Report ("PSR") recommended applying a two level sentencing enhancement because of Ramsey's use of a minor to commit the crimes, pursuant to United States Sentencing Guidelines (U.S.S.G.) section 3B1.4. Over Ramsey's objections, the district court applied the enhancement and sentenced Ramsey to 121 months imprisonment./1 On appeal, Ramsey objects to the application of the enhancement, arguing that he did not "use" his brother within the definition of section 3B1.4. He also contends that the court erred by failing to apply the rule of lenity. As the district court's application of the enhancement was proper, we affirm.

I.  History

On November 12, 1999, a confidential source working for the Federal Public Housing Drug Task Force in Cairo, Illinois, notified Federal Bureau of Investigation ("FBI") agents in Carbondale, Illinois, that the defendant-appellant, nineteen year old Joseph Ramsey ("Ramsey"), was involved in the selling of crack cocaine. Through the confidential source, the FBI agents made arrangements for Ramsey to sell crack cocaine to

an undercover agent in Cairo. On November 16, Ramsey traveled with the confidential source and his sixteen year old brother Duane Ramsey ("Duane") to Fort Defiance Park in Cairo where the sale was to take place. When they reached the park, Ramsey, the confidential source, and Duane all got out of the car, though only Ramsey and the confidential source approached the agent; Duane stayed behind. The undercover agent did not initially know who Duane was, as he had only expected Joseph and the confidential source.

During the transaction, Ramsey did all the talking while Duane remained in the background. After the undercover agent arranged to make the purchase with Ramsey, Ramsey called Duane over and told him to go ahead and show the undercover agent the crack cocaine. Duane pulled the crack cocaine out of his pocket and gave it to the undercover agent. The agent then gave the money to Duane. The agent then asked Ramsey if he could supply two more ounces of crack cocaine. Ramsey replied that he could, and agreed to be contacted through the confidential source.

On November 17, the parties met for the second time at Fort Defiance Park. Once again, Ramsey negotiated the final details of the transaction. He told the agent how much crack cocaine he and Duane had brought and agreed with the agent on a price. Ramsey then motioned to Duane to provide the crack cocaine to the agent, and the agent gave Duane the money.

Upon entering their car, Ramsey and Duane were taken into custody by law enforcement agents who had been providing surveillance. After waiving his constitutional rights, Ramsey admitted that he and his brother had sold crack cocaine to the undercover agent on November 16 and 17. Ramsey told the agents that, at the time he was contacted to sell the crack cocaine, he did not have the quantity that the individual wanted to buy. Ramsey then went to Duane and arranged for him to provide the rest of the crack cocaine needed for the sale. When the agents asked Ramsey why he was the one doing all the talking, he responded that Duane was simply too scared to do so. Ramsey also admitted that he had sold in excess of fifty grams of crack cocaine in the two years prior to his arrest, not counting the amount delivered to the undercover agent on November 16 and 17.

On February 3, 2000, Ramsey pleaded guilty to three counts of distribution of crack cocaine. A PSR was submitted on March 27, recommending application of the two level enhancement pursuant to U.S.S.G. section 3B1.4 based on Ramsey's use of his juvenile brother in the commission of two

of the distributions. U.S. Sentencing Guidelines Manual sec. 3B1.4 (1998). On April 18, Ramsey filed objections to the recommendation. The probation office submitted an Addendum to the PSR maintaining the position that the enhancement should be applied.

On May 12, after reviewing the objections and hearing oral argument, the district court found that Ramsey did use his younger brother Duane within the meaning of section 3B1.4, noting that Ramsey directed, commanded, and encouraged his minor brother. The court thus overruled Defendant's objection and applied the two level enhancement. Ramsey appeals this application.

II.  Analysis

Joseph Ramsey contends that the district court committed error in increasing his total offense level by two points pursuant to U.S.S.G. section 3B1.4. Ramsey argues that he did not direct or command the actions of his juvenile brother. He thus contends that by applying the enhancement to the facts of this case, the district court misinterpreted the meaning of "use." On appeal Ramsey also argues that the language in section 3B1.4 is ambiguous, and that the rule of lenity, which requires ambiguity to be resolved in favor of the criminally accused, should be applied. The nature of the interaction between Ramsey and his juvenile brother is a question of fact, which we review for clear error. See United States v. Bailey, 227 F.3d 792, 801 (7th Cir. 2000); United States v. Vivit, 214 F.3d 908, 914 (7th Cir. 2000). We review the district court's interpretation of section 3B1.4 de novo. See Vivit, 214 F.3d at 914; United States v. Brack, 188 F.3d 748, 765 (7th Cir. 1999).

A.  The Use of a Minor Enhancement
1.  Validity of Section 3B1.4
As a preliminary matter, we feel compelled to address the validity of section 3B1.4. Though Ramsey did not challenge the validity of the provision before this court,/2 the Sixth Circuit has addressed the issue, and found the provision to be inapplicable to defendants who have not attained the age of twenty-one. Upon consideration, we respectfully disagree with the Sixth Circuit, and find that the Sentencing Commission did not abuse its discretion when it promulgated section 3B1.4 to include all defendants, regardless of age.

Congress created the Sentencing Commission in order to "establish sentencing policies and practices for the Federal criminal justice system." 28 U.S.C. sec. 991(b)(1) (1994); see also Mistretta v. United States, 488 U.S. 361,

367-70, 109 S. Ct. 647, 102 L. Ed. 2d 714 (1989).
In addition to promulgating a set of sentencing
guidelines, see sec. 994(a)(1), the Commission is
expected to periodically review the guidelines,
and revise them as necessary. See sec. 994(o).
Any amendments to the guidelines are submitted to
Congress and automatically take effect 180 days
after submission, unless Congress modifies or
disapproves an amendment. See sec. 994(p).

Ten years after the creation of the Commission,
Congress passed the Violent Crime Control and Law
Enforcement Act of 1994. Pub. L. No. 103-322,
1994 HR3355, sec. 140008, 108 Stat. 2033 (1994).
This Act included a large list of directives to
the Sentencing Commission commanding the
amendment of existing guidelines, and
promulgation of new ones. The precursor to
section 3B1.4 directed the Sentencing Commission
"to promulgate guidelines or amend existing
guidelines to provide that a defendant twenty-one
years of age or older who has been convicted of
an offense shall receive an appropriate sentence
enhancement if the defendant involved a minor in
the commission of the offense." Id. sec. 140008
(emphasis added). The Commission undertook this
task, but when it promulgated the new guideline,
it eliminated the requirement that the defendant
be at least twenty-one to be subject to the
enhancement. Thus, section 3B1.4 reads as
follows: "If the defendant used or attempted to
use a person less than eighteen years of age to
commit the offense or assist in avoiding
detection of, or apprehension for, the offense,
increase by two levels." U.S.S.G. sec. 3B1.4
(emphasis added). The resulting enhancement is
thus applicable to defendants of all ages. See
id.; see also Butler, 207 F.3d at 844 (Clay, J.).

The Supreme Court has held that "the Commission
enjoys significant discretion in formulating
guidelines." Mistretta v. United States, 488 U.S.
at 377. In United States v. Hill, 48 F.3d 228
(7th Cir. 1995), we stated that when the
Commission is "exercising this delegated power,
the courts cannot interfere or second-guess
unless the Commission oversteps constitutional
bounds." Id. at 231. The Eighth Circuit took this
language further, holding that, "[g]iven
Congress's supervisory role, the Sentencing
Commission's formulation of the Guidelines is not
subject to judicial review unless the Commission
oversteps constitutional bounds." United States
v. Vincent, 167 F.3d 428, 431 (8th Cir. 1999)
(citing Hill, 48 F.3d at 231), cert. denied, 528
U.S. 848 (1999). Since our decision in Hill,
however, the Supreme Court has clarified the
level of discretion accorded to the Sentencing
Commission. "Broad as that discretion may be . .

. it must bow to the specific directives of Congress. In determining whether [the Amendment] accurately reflects Congress' intent, we turn, as we must, to the statutory language." United States v. LaBonte, 520 U.S. 751, 757, 117 S. Ct. 1673, 137 L. Ed. 2d 1001 (1997) (finding that the Commission's revised commentary to a guideline was inconsistent with the plain language of the original congressional directive, and thus had to give way. LaBonte).

The issue, then, is whether the Commission obeyed the specific directive of Congress. In the original statutory language, Congress directed that an enhancement be applied to all defendants age twenty-one and older. See Pub. L. No. 103-322, sec. 140008. The Sixth Circuit found that by eliminating the age restriction, section 3B1.4 "was a direct overruling of an explicit Congressional declaration." Butler, 207 F.3d at 850 (Jones, J., concurring). Because the Commission did not obey the specific congressional directive, the court would not apply the guideline. See id. at 849-52. Yet, another view is possible: that the Commission did promulgate a guideline that encompassed the directive of Congress. Under section 3B1.4, defendants age twenty-one or older will receive a sentence enhancement if the defendant used a minor in the commission of the offense. The Commission simply expanded the provision to encompass a greater number of defendants./3 This and at least one other circuit have found that it is within the Commission's statutory mandate to legislate more broadly than Congress. See United States v. Lauer, 148 F.3d 766, 770 (7th Cir. 1998) (upholding the Commission's discretion to broaden the statutory definition of "financial institution" through the Guidelines' commentary); United States v. Ferrarini, 219 F.3d 145, 159-60 (2nd Cir. 2000) (holding that "the Commission was fully empowered, under [28 U.S.C. sec. 994], to adopt the definition of 'financial institution' currently contained in the Guidelines, even though the definition is broader than that suggested [by Congress]"). As long as the Commission's guideline is not "at odds" with the congressional directive, it is within the commission's discretion to enlarge the category of defendants to whom an enhancement will apply. See LaBonte, 520 U.S. at 757; Ferrarini, 219 F.3d at n.11; see also Mistretta, 488 U.S. at 377.

Further, the Commission is governed by more than just the congressional directive to amend the guidelines. The Commission's governing statute requires it to consider the possible relevance of age in establishing categories of defendants for use in the guidelines. See 28 U.S.C. sec. 994(d)(1) (1994). With respect to

this particular enhancement, Congress also directed the Commission to consider "the possible relevance of the proximity in age between the offender and the minor(s) involved in the offense." Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, sec. 140008(b)(4), 108 Stat. 1796 (1994). Further, one of the Commission's responsibilities is to ensure uniformity in sentencing. See 28 U.S.C. sec. 991(b)(1)(B) (1994). It is possible that, after considering the relevance of age to this enhancement, the sentencing commission concluded that a nineteen year old defendant exerts as much influence over the minors he recruits as does a twenty-one year old defendant, with the potential to cause an equal amount of harm. The two categories of defendants would thus deserve equal punishment.

The argument that the Commission obeyed the congressional directive is weakened somewhat by the legislative history of section 140008. The original Senate version of the provision provided for the enhancement to apply to defendants eighteen years of age or older./4 Violent Crime Control and Law Enforcement Act of 1993, Senate amendment no. 1170, 103rd Cong., 139 Cong. Rec. S15,638 (1993). This proposal was essentially rejected by the proposed House versions, which all state that the enhancement would apply only to defendants twenty-one years or older./5 See, e.g., 140 Cong. Rec. H8772-03 (1994); 140 Cong. Rec. H7372-01 (1994). Though we found no discussion in the record explaining the change, the eighteen year old formulation was eventually rejected in favor of the narrower formulation. The final version of the provision, codified in Pub. L. 103-322, section 140008, used the House's twenty-one years or older formulation.

Further, discussions about the "solicitation of a minor" enhancement often referenced a group of provisions providing for mandatory minimum sentences for defendants twenty-one or older. Minimum sentences were discussed for defendants who sell drugs to a juvenile, buy drugs from a juvenile, use a juvenile to sell drugs, or use a juvenile to avoid detection of a drug offense. See, e.g., 140 Cong. Rec. S12496-01 (1994). The age limit thus seems to have been, at least initially, part of a coordinated plan to punish twenty-one year old (or older) defendants.

Admittedly, it is possible that the Commission might not have given sufficient weight to the congressional directive. However, "Congress' expression of intent as to sec. 3B1.4 did not begin and end with its enactment of sec. 140008." Butler, 207 F.3d at 845 (Clay, J.). Congress could have rejected or amended the Guideline

before it went into effect. The Commission submitted the draft of section 3B1.4 to Congress on May, 1, 1995, in the form of Amendment 527. See Amendments to the Sentencing Guidelines for the United States Courts, 60 Fed. Reg. 25074, 25086 (May 10, 1995). The Commission stated that the amendment implemented the original congressional directive in a slightly broader form. Id. On October 30, 1995, Congress considered and rejected some of the amendments proposed on May 1, 1995, see Pub. L. No. 104-38, 109 Stat. 334 (1995), but did not act to modify or disapprove Amendment 527./6 Thus, the amendment became effective on November 1, 1995. See U.S.S.G. app. C (1998). Particularly in light of its rejection of other proposed amendments, by not taking action with respect to section 3B1.4, Congress implicitly accepted the Commission's elimination of the age restriction./7

We thus find that the Sentencing Commission did not misread congressional intent, but rather was exercising reasonable discretion in promulgating a guideline that reaches defendants under age twenty-one. We will now consider the appropriateness of applying the enhancement to Mr. Ramsey.

2.  Interpretation of Section 3B1.4

To determine the meaning of the guideline at issue, we begin with the language of the statute. See United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241, 109 S. Ct 1026, 103 L. Ed. 2d 290 (1989). Section 3B1.4 provides for a two-level sentence enhancement "[i]f the defendant used or attempted to use a person less than eighteen years of age to commit the offense." U.S.S.G. sec. 3B1.4. Application note one to section 3B1.4 explains that "'used or attempted to use' includes directing, commanding, encouraging, intimidating, counseling, training, procuring, recruiting, or soliciting." Id. cmt. n.1. The Supreme Court addressed the interpretation of the word "use" in another statutory scheme and concluded that the word "must be given its 'ordinary or natural' meaning." Bailey v. United States, 516 U.S. 137, 145, 116 S. Ct. 501, 133 L. Ed. 2d 472 (1995) (quoting Smith v. United States, 508 U.S. 223, 113 S. Ct. 2050, 124 L. Ed. 2d 138 (1993)). As illustrated by reference to a dictionary, the verb "use" means "to avail oneself of; to employ; to utilize; to carry out a purpose or action by means of; to put into action or service, especially to attain an end." Black's Law Dictionary 1541 (6th ed. 1990) (citing State v. Howard, 221 Kan. 51, 557 P.2d 1280, 1281 (Kan. 1976)). In addition we must consider section 3B1.4 in light of its placement within the Sentencing Guidelines, as "the meaning of

statutory language, plain or not, depends on context." King v. St. Vincent's Hosp., 502 U.S. 215, 221, 112 S. Ct. 570, 116 L. Ed. 2d 578 (1991); see also Shell Oil Co. v. Iowa Dept. of Revenue, 488 U.S. 19, 26, 109 S. Ct. 278, 102 L. Ed. 2d 186 (1988).

This court has had occasion to review the application of section 3B1.4 numerous times, and, in accord with the above definitions, has interpreted "used or attempted to use" fairly broadly. Most recently, in United States v. Vivit, we explained that the defendant "'used minors in the commission of his crimes' if his affirmative actions involved minors in his criminal activities." Vivit, 214 F.3d at 920 (quoting United States v. Brack, 188 F.3d 748, 765 (7th Cir. 1999). This test can be met when the minor is a partner in the criminal offense, see United States v. Benjamin, 116 F.3d 1204, 1206 (7th Cir. 1997), as well as when the minor's role is subordinate to that of the criminal defendant. In Benjamin, we indicated that a defendant who partners with a minor will be found to have used that minor to commit his crime in the sense contemplated by section 3B1.4 . See id. This conclusion is in accord with application note one, which states that "use" includes directing and encouraging. By forming a partnership with a minor, a criminal defendant is undeniably encouraging that minor to commit a crime. The fact that the minor is a voluntary participant and equal does not make the act socially acceptable.

In this respect, our interpretation of section 3B1.4 differs from that of the Sixth Circuit. In United States v. Butler, 207 F.3d 839 (6th Cir. 2000) (Jones, J., concurring), the Sixth Circuit declined to follow our decision in Benjamin. Id. at 847-49. The court in Butler instead held that "the term 'use' requires a showing of more than a mere criminal partnership." Id. at 849 (stating that "'using' a minor to carry out criminal activity entails more than being the equal partner of that minor in committing a crime"). This holding seemed partially driven by the fear that ruling otherwise would create a strict liability enhancement. See id. at 848. As the court stated, "if numerous adult defendants participated in a crime along with a minor, every single one of the adult defendants would be subject to the two level enhancement, regardless of the roles they played in involving the minor in the crime." Id. at 848. Our position, however, does not automatically lead to the conclusion feared by the Sixth Circuit. The decision in Benjamin turned on the fact that there was one defendant who was found to have conspired with a minor. Because only two people were involved in

the commission of the crime, there was no need to examine who "used" the minor. However, that decision did not eliminate the requirement that a defendant must affirmatively involve a minor in order to be eligible for the enhancement. See Vivit, 214 F.3d at 920. Thus it is possible that, in a case involving multiple defendants and a minor, some might be found to have used the minor while others would not. For example, a defendant who was not aware that the minor was participating, and who had no contact with the minor, probably would not be found to have used the minor. This circuit's interpretation of section 3B1.4 does not remove the need for case by case analysis; the defendant must still take affirmative acts to involve the minor in the commission of the offense. See Butler, 207 F.3d at 848; see Vivit, 214 F.3d at 920./8

Children often look up to their older siblings, friends, and acquaintances. It is not unreasonable to assume that Congress wanted to discourage putative defendants from involving minors in criminal activity, as equals or otherwise. To shield defendants from the application of this provision simply because the minor that they solicited is given a substantial role in the commission of the offense would be a blow to the purpose of the provision: to discourage defendants from involving minors in the commission of crimes. Thus, regardless of whether the minor is a partner or a subordinate, the enhancement will be applied where the defendant affirmatively involved the minor in the commission of a crime.

Under our test, the inquiry is whether the defendant affirmatively involved a minor in the commission of an offense, regardless of whether the minor is a partner to the offense or is in a subordinate position. In the instant case, the correct inquiry is thus whether Ramsey directed, commanded, encouraged, or recruited Duane in order to commit these drug offenses.

3. Application of Section 3B1.4

The district court correctly determined that this factual situation falls within the purview of section 3B1.4. First, the factual findings underlying the application of the sentencing enhancement were not clearly erroneous. While Ramsey alleges that there is no evidence to support the finding that he directed, commanded, or recruited Duane, the record indicates otherwise. Ramsey made the initial contact with the confidential source. Ramsey then recruited Duane into the commission of the crime by asking him to supply the additional crack cocaine needed to complete the sale. During the transactions on

November 16 and 17, Ramsey made all of the arrangements with the undercover agent, and did all of the talking. Duane was called over by Ramsey only after the final arrangements were made. At that time, Ramsey directed Duane to show the undercover agent the crack cocaine. On both occasions, Duane complied, gave the crack cocaine to the agent, and accepted the agent's money. None of these facts are disputed by Ramsey.

Second, the district court did not err in its interpretation or application of section 3B1.4. The transcript from the sentencing hearing indicates that the district court focused on the "directing, commanding, [and] encouraging" language of the guideline's application notes. From the above facts, it is clear that Ramsey did all of these things. Further, Ramsey took numerous affirmative actions to involve his brother, a minor, in the distribution of crack cocaine, action which would constitute "recruiting." U.S.S.G. ch. 3, pt. B, cmt. n.1. Though a partnership relationship would not prevent application of the enhancement, as explained above, the facts indicate that the minor was in a subservient position to Ramsey, making this a case clearly within the meaning of section 3B1.4, even for our colleagues in the Sixth Circuit.

Ramsey argues that Vivit and the cases that it relied upon are all distinguishable from the present case. We do not agree. Vivit involved a medical doctor who directed two minors to falsify attendance sheets so that he could file false insurance claims on their behalf. United States v. Vivit, 214 F.3d 908 (7th Cir. 2000). By directing the minors to create false records, the doctor involved minors in his crime, and thus used them within the definition of section 3B1.4. Ramsey attempts to distinguish the present case by focusing on the substantial age differential between the minors and the defendant in Vivit, as compared to the three years that separate Ramsey and his brother Duane. First, Ramsey suggests that the minors in Vivit would not necessarily have known what they did was illegal (due to the nature of the crime--fraud) whereas the minor here was well aware of the illegality of his acts. Even assuming the truth of this assertion, the distinction is not relevant. The enhancement in section 3B1.4 focuses on whether the defendant used a minor in the commission of a crime, not whether the minor knew that he was being used to commit a crime. While Ramsey is perhaps implicitly arguing that a minor who understands the illegality of his action would be a partner to the crime, this would not render the guideline inapplicable, as noted above. Second, Ramsey argues that Vivit is distinguishable since the

defendant there was presumably much older and therefore capable of exercising considerable persuasion over the minors; the implication of this argument is that the enhancement should not be applied when the defendant and a minor are close in age. We do not agree. As the court noted at oral argument, the closeness in age might have led the district court to consider granting a downward departure, but it does not prevent the application of section 3B1.4.

Ramsey's attempts to distinguish other cases are also unavailing. In United States v. Benjamin, 116 F.3d 1204 (7th Cir. 1997), the court found that the defendant had conspired with a minor and that the minor was thus his partner in crime. See id. at 1206. This led to the conclusion that the minor was used by the defendant. See id. Ramsey argues that, as there is no charge of conspiracy in the instant case, Benjamin is not controlling. However, we rely on Benjamin to show that a minor who was a partner can be considered "used" by a defendant; this is true regardless of whether there is a conspiracy or not. Further, the introductory comment to Chapter 3, Part B of the sentencing guidelines makes clear that "the determination of a defendant's role in the offense is to be made on the basis of all [relevant] conduct . . . and not solely on the basis of elements and acts cited in the count of conviction." U.S.S.G. ch. 3, pt. B, introductory cmt. The facts here could support a finding of conspiracy, thus making Benjamin an identical situation.

Finally, United States v. Brack, 188 F.3d 748 (7th Cir. 1999), presents a situation very close to the present one. During two telephone conversations, the defendant in Brack asked a minor to bring her crack cocaine. This court held that this constituted "use" of a minor, regardless of the fact that the minor was a willing participant in the crime. In fact, there the minor was "a high-ranking, salaried member of [the defendant's] organization." Id. at 765. Thus Ramsey's argument that Duane was not "used" simply because he was a willing participant is not tenable.

The District Court thus did not err in increasing Ramsey's sentence by two levels due to his use of his minor brother Duane in the commission of his drug offenses.

B. Rule of Lenity

On appeal, Ramsey argues that the term "use" in section 3B1.4 is ambiguous and that the district court should have applied the rule of lenity. Ramsey admits that he did not specifically request that this rule be applied, but contends

that his objections to the PSR and counsel's argument at sentencing were enough to preserve the issue for appeal. He contends that, at worst, his failure to cite to the rule should be construed as a forfeiture, subjecting the sentencing decision to plain error review. The government argues that Ramsey's failure to raise this issue in the district court operates as a waiver, which precludes review by this court. We agree with the government, and find that Ramsey's failure to raise the rule of lenity at the sentencing hearing operated as a waiver.

Waiver occurs when the defendant "intentionally relinquishes a known right." United States v. Staples, 202 F.3d 992, 995 (7th Cir. 2000) (citing, inter alia, United States v. Olano, 507 U.S. 725, 730-734, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993)). During argument before the district court, Ramsey did not argue that section 3B1.4 was ambiguous. Instead, he chose to adopt a specific interpretation of the term "use" and argue for the application of his interpretation. The district court disagreed with Ramsey and adopted a contrary interpretation, prompting the instant appeal. Thus, not only did Ramsey never mention the rule of lenity in the district court, but he never even argued that the meaning of "use" was ambiguous. Asserting now that the rule of lenity should be applied is simply the Defendant's last ditch effort to reduce his sentence.

III.  Conclusion

The district court did not err by increasing the defendant's total offense level by two points for using a minor in the commission of his offense. That court's factual findings were not erroneous and their interpretation and application of U.S. Sentencing Guideline section 3B1.4 was correct. We AFFIRM.

/1 In addition, the district court sentenced Ramsey to a four-year term of supervised release and imposed a $300 special assessment and a $300 fine.

/2 In his brief before this court, Ramsey relied upon United States v. Butler, 207 F.3d 839 (6th Cir. 2000), for the proposition that a defendant who partnered with a minor would not be considered to have "used" that minor. Defendant's brief conceded that the court in Butler had reviewed the legislative history and found sec. 3B1.4 to be valid; thus a court could apply the enhancement to defendants under the age of

twenty-one. This concession, however, was inappropriate. In Butler, the Sixth Circuit issued two opinions. The opinion relied upon by the Defendant, Judge Clay's opinion, did not constitute the opinion of the court on the issue of the validity of sec. 3B1.4 (Part II.B.1). The Sixth Circuit's opinion on the validity of sec. 3B1.4 is actually found in Judge Jones' concurring opinion, which was joined by Judge Cole. See Butler, 207 F.3d at 849-52 (Jones, J., concurring). Judge Jones' opinion found that the text of sec. 3B1.4 was not a sufficiently reasonable implementation of the congressional directive. See id.; infra notes 3 and 7 and accompanying text. As sec. 3B1.4 did not comport with congressional intent, the court remanded for imposition of a new sentence in accordance with the original congressional directive. See Butler, 207 F.3d at 852 (Jones, J., concurring).

/3 The United States Government, in its submissions to the Sixth Circuit in Butler, contended that the removal of the age limitation was reasonable because the Commission simply "'implemented Congress's directive in a slightly broader fashion.'" Butler, 207 F.3d 839, 850 (Jones, J., concurring) (quoting Gov't Br. at 9). The Sixth Circuit found this argument unpersuasive. Id. at 850-851. First, they found that "reflexively relying on the commission's characterization of its own amendment would abandon our judicial role 'in determining whether [the] [a]mendment accurately reflects Congress' intent.'" Id. at 850 (quoting LaBonte, 520 U.S. at 757, 117 S. Ct. 1673). Second, they found that "the limit was a core aspect of th[e] directive." Id. at 851.

/4 There was a rather lengthy discussion on this enhancement at the time of its introduction on the floor. Senator Pressler, the author of the amendment, said that it dealt "with the particularly heinous circumstance of an adult criminal using children to commit their crimes." 139 Cong. Rec. S15638 (1993). He mentioned gang violence in particular as one area of concern.

/5 Congressional Record indicates that the House yielded to the Senate section. See 140 Cong. Rec. H8772-03 (1994); 140 Cong. Rec. H7372-01 (1994). However, we could not find any House version adopting the Senate version of the proposed amendment.

/6 As noted by Judge Clay's opinion in Butler, "Congress disapproved of a proposed amendment that would have eliminated the 100:1 sentencing ratio that treats one who deals in a given quantity of crack cocaine the same as it treats one who deals in 100 times as much powder

cocaine." Butler, 207 F.3d at n.1 (Clay, J.) (citing United States v. Gaines, 122 F.3d 324, 327 (6th Cir. 1997)).

/7 But see Burns v. United States, 501 U.S. 129, 136, 111 S. Ct. 2182, 115 L. Ed. 2d 123 (1991) ("'Not every silence is pregnant.'") (quoting Illinois Dept. of Public Aid v. Schweiker, 707 F.2d 273, 277 (7th Cir. 1983)). In Butler, the Sixth Circuit cited Burns for the proposition that "silence should not be 'credited when it is contrary to all other textual and contextual evidence of congressional intent.'" 207 F.3d at 851 (Jones, J., concurring) (quoting Burns, 501 U.S. at 136). The court found that the original directive was "sufficiently clear to overcome an argument" of congressional silence. Id. Judge Jones noted that it is the responsibility of the courts to "squar[e] the enacted guideline with the original statutory language." Id. (citing Burns, 501 U.S. at 136). Inferring too much from silence "would lead courts wholly to abandon their role of assessing whether enacted guidelines comport with congressional intent." Id. (citing LaBonte, 520 U.S. at 757).

/8 The Sixth Circuit also found that a strict liability enhancement would not comport with the statutory scheme. As noted above, we do not agree that our view creates a strict liability enhancement. Further, we find that interpreting the word "use" to encompass situations where the defendant partners with a minor is consistent with the statutory scheme. Part B of the Sentencing Guidelines is entitled "Role in the Offense" and "provides adjustments to the offense level based upon the role the defendant played in committing the offense." U.S.S.G. ch. 3, pt. B, introductory cmt. (1998). One other enhancement in Part B is similar to the use of a minor section, Abuse of Position of Trust or Use of a Special Skill, in that both punish defendants for abusing a superior social position. See U.S.S.G. sec. 3B1.3, cmt. background (1998) (explaining that the enhancement is justified because the defendant's position or skill level makes his behavior more blameworthy). The abuse of position of trust enhancement has been applied to situations where the criminal defendant partnered with a willing participant. See United States v. Polichemi, 219 F.3d 698, 713-14 (7th Cir. 2000), cert. denied, Neal v. United States, 121 S. Ct. 485, 69 U.S.L.W. 3333 (2000). Just as an attorney who partners with a client to commit a crime would receive an enhancement under sec. 3B1.3 for abuse of a position of trust, see id. at 713, an adult who partners with a minor to commit a crime will receive an enhancement under sec. 3B1.4 for use of a minor.