# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 05-4181

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

KEITH E. BRAZINSKAS,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Western Division.
No. 05 CR 50030-1—**Philip G. Reinhard**, *Judge.*

ARGUED MAY 11, 2006—DECIDED AUGUST 15, 2006

Before POSNER, EASTERBROOK, and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* After pleading guilty to bank robbery in violation of 18 U.S.C. § 2113(a), Keith Brazinskas was sentenced to 120 months in prison. In calculating the advisory sentencing guideline range, the district court added two levels to Brazinskas's base level for use of a minor to commit the offense. See U.S.S.G. § 3B1.4. In this appeal, Brazinskas claims that the facts do not support that enhancement. We conclude that the district court's factual findings were not clearly erroneous, that the district court correctly decided that it did not matter whether Brazinskas actually knew that his assistant was a minor, and that the sentence is otherwise reasonable. We therefore affirm.

**I**

On March 24, 2005, Brazinskas agreed to assist Cortney Hall and Robert Eviston with a bank robbery they planned to commit. That morning, Eviston, along with his 16-year-old girlfriend, Cassandra Guevara, drove Brazinskas to the Associated Bank in Rockford, Illinois. Eviston and Brazinskas had included Guevara in the group in the hope that this would help them to evade the police during the robbery. Once at the bank, Brazinskas entered through the front door, armed with a BB gun. He handed the bank teller a plastic bag and told the teller to fill it with money. The teller complied, placing $3,850 in the bag, $200 of which was marked or "bait bills." The teller also slipped in a red ink dye pack. Brazinskas then walked back out the front door and met Eviston at the back of the bank.

After leaving the bank, Brazinskas jumped into the trunk of Eviston's car, which Guevara had opened for him. At that point, things began to go awry. As soon as the trunk was closed, the dye pack exploded, staining the money (and Brazinskas) with red ink and causing the trunk to fill with smoke. Brazinskas yelled for Eviston to stop. When Eviston heard him and got Brazinskas out of the trunk, Brazinskas discarded the bag he had used in a nearby river. Brazinskas, Eviston, and Guevara returned to Hall's home, where they tried to wash the red dye off of the money. Eviston then buried some of the money in Hall's back yard, hoping to hide it from the police. With the aid of a confidential informant, who apparently was at Hall's house during this time, Brazinskas was arrested at 3:00 am the next day.

The grand jury indicted Brazinskas on one count of bank robbery. Initially, he pleaded not guilty, but later he changed his plea to guilty on July 22, 2005. According to U.S.S.G. § 2B3.1, his base offense level was 20. The government argued that a two-point increase in this level was appropriate under U.S.S.G. § 2B3.1(b)(1), because the stolen

property belonged to a financial institution (which, the government was careful to show, was insured at the relevant time by the Federal Deposit Insurance Corporation). The government also argued that enhancements were appropriate because Brazinskas had used a dangerous weapon during the commission of the offense and because he had used a minor to help him escape. With all of these enhancements, as well as a three-level reduction for acceptance of responsibility, Brazinskas's final offense level was 25 and his criminal history category was VI. This led to an advisory sentencing guideline range of 110 to 137 months. At sentencing, the only adjustment that Brazinskas challenged was § 3B1.4, which calls for a two-level increase in offense level for the use of a minor. The court agreed with the government that this was proper; in the end, it selected a sentence within the guideline range of 120 months in prison, along with three years' supervised release and $1,712 in restitution. Brazinskas now appeals.

## II

Even in this post-*Booker* world, we continue to review the district court's interpretation of the guidelines, including § 3B1.4, *de novo*. See *United States v. Ramsey*, 237 F.3d 853, 855 (7th Cir. 2001). The district court's underlying fact-findings, which it makes as part of its computation of the advisory guideline range, are reviewed only for clear error. Once the district court has pronounced its sentence, we review the final sentence for reasonableness, see *United States v. Booker*, 543 U.S. 220, 261 (2005).

Section 3B1.3 of the U.S. Sentencing Guidelines requires a two-level increase in offense level where the "defendant used or attempted to use a person less than eighteen years of age to commit the offense or assist in avoiding detection of, or apprehension for, the offense." The application notes to the guideline explain that the phrase "used or attempted to use" includes actions like "directing, com-

manding, encouraging, intimidating, counseling, training, procuring, recruiting, or soliciting." U.S.S.G. § 3B1.4 cmt. n.1.

In *Ramsey*, we interpreted the word "use" in this guideline broadly to include those situations in which a defendant's "affirmative actions involved minors in his criminal activities," such as where a minor is a partner in a criminal offense or when a minor's role is subordinate to that of the defendant. 237 F.3d at 859. We also indicated that the defendant must know that the minor was participating in the crime: "a defendant who was not aware that the minor was participating, and who had no contact with the minor, probably would not be found to have used the minor." *Id.* at 860.

The district court's finding that Brazinskas knew that Guevara was involved with the crime was not clearly erroneous. The court acknowledged that Brazinskas was not the mastermind of the robbery plan, but that the group as a whole "discussed that [the minor] would go with them, and it's obvious that [the minor] was in the car." The court also noted that Brazinskas knew that the group stood a better chance of success if the getaway car contained both a male and a female. Eviston admitted as much, when he stated that Guevara "knew what was going on, and she was with [Eviston] because [they] thought that if a guy and girl were together, it would look good as [they] drove away." After Brazinskas left the bank, Guevara helped him to climb into the trunk, and after the dye pack exploded, she helped Brazinskas dispose of the bag. Later, she assisted while the robbers counted the money.

This is ample evidence to support the enhancement. See, *e.g.*, *United States v. Hodges*, 315 F.3d 794, 802 (7th Cir. 2003) (fact that defendant "took possession of [the stolen guns] with [the minor's] assistance" was enough for § 3B1.4 enhancement to apply); *United States v. Benjamin*, 116 F.3d

1204, 1206 (7th Cir. 1997) (evidence establishing that minor accompanied defendant to facilitate drug deal, told the buyer where to meet, and listened to parties discuss the terms of sale sufficiently proved that minor was a "partner" for purposes of § 3B1.4). For the record, we add that there is no support in this record for the proposition that Brazinskas was a minor actor in the overall scheme. He was the one who walked into the bank with a BB gun, gathered the money, and left with it. We thus reject his argument that his role was so small and incidental that he could not have been among those who "used" Guevara.

Brazinskas also argues that the enhancement under § 3B1.4 does not apply, as a matter of law, unless the defendant knew that his criminal activity involved the use of a minor. Relying on dicta in *United States v. Ceballos*, 302 F.3d 679 (7th Cir. 2002), the district court concluded that there was no such requirement in § 3B1.4. Instead, it is necessary only that the defendant know that the person is being used, as we noted earlier.

In *Ceballos*, we observed that the district court's interpretation of § 3B1.4 in that case "requires a finding that the defendant had actual knowledge that the person he used to commit the offense was a minor, and two other courts have held that § 3B1.4 does not require such actual knowledge." 302 F.3d at 697 (citing *United States v. Gonzalez*, 262 F.3d 867, 870 (9th Cir. 2001); *United States v. McClain*, 252 F.3d 1279, 1286 (11th Cir. 2001)). In *Gonzalez*, the Ninth Circuit "decline[d] [the defendant's] invitation to read a scienter requirement into section 3B1.4 because the plain language of the guideline does not require that a defendant have knowledge that the individual is under eighteen years of age for the enhancement to apply." 262 F.3d at 870. The Eleventh Circuit took the same approach, noting that a scienter element would frustrate the purpose of § 3B1.4, which is to protect minors from being used to commit crimes. 252 F.3d at 1286. To the same effect, in *United*

*States v. Lewis*, 386 F.3d 475 (2d Cir. 2004), the court held that "§ 3B1.4 does not require scienter in order to apply the enhancement, that is, it is not necessary for the government to show that a defendant had actual knowledge that the person undertaking criminal activity was a minor." *Id.* at 479. See also *United States v. Thornton*, 306 F.3d 1355, 1358-60 (3d Cir. 2002).

The position of these courts is consistent with the one we took with respect to the statute making it unlawful for a person eighteen years or older knowingly and intentionally to use or recruit a minor in connection with a drug offense. See *United States v. Smith*, 223 F.3d 554 (7th Cir. 2000), construing 21 U.S.C. § 861(a)(1). In *Smith*, we held that the government "does not have to prove that the defendant . . . knew that the person was under the age of 18." 223 F.3d at 566. Like the Eleventh Circuit, we concluded that a scienter requirement would "merely encourage[ ] leaders of organizations . . . to blind themselves to the ages of the youths with whom they deal" and frustrate the legislative purpose to protect juveniles. *United States v. Frazier*, 213 F.3d 409, 419 (7th Cir. 2000). The same rationale applies with equal force here. We therefore join our sister circuits in holding that there is no scienter requirement in § 3B1.4.

The judgment of the district court is AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*