LYNN ADELMAN, District Judge
Defendant Devon Brantley, then 18 years old, and a 16-year-old co-actor, "M.N.," attempted to rob a Subway Restaurant in Milwaukee. Defendant pointed a firearm at an employee, who quickly fled into the restaurant's freezer. Unable to open the register, defendant grabbed some juice from the cooler, and the two youths fled the store. Police soon spotted defendant walking in the area, and after a chase were able to locate and take him into custody.
The government charged defendant with a violation of the Hobbs Act, 18 U.S.C. § 1951, and with brandishing a firearm during a crime of violence, 18 U.S.C. § 924(c). Defendant pleaded guilty to the charges, and I set the case for sentencing. In imposing sentence, the court follows a two-step process. First, it must determine the defendant's sentencing range under the guidelines. Second, it must hear the arguments of the parties and conclude by making an individualized assessment of the appropriate sentence based on the 18 U.S.C. § 3553(a) factors. United States v. Bloch, 825 F.3d 862, 869 (7th Cir. 2016).
I. GUIDELINE CALCULATION
Defendant's pre-sentence report ("PSR") set a base offense level of 20 on the robbery count, U.S.S.G. § 2B3.1(a), adding 2 levels because defendant "used" a minor-M.N.-to commit the offense, U.S.S.G. § 3B1.4. The report then subtracted 3 levels for acceptance of responsibility, U.S.S.G. § 3E1.1, for a final level of 19. The PSR further determined that defendant fell in criminal history category of I, producing an imprisonment range of 30-37 months on the robbery count. The § 924(c) count carried a mandatory consecutive term of 84 months, which became the guideline sentence. 18 U.S.C. § 2K2.4(b).
Defendant objected to the application of U.S.S.G. § 3B1.4. That guideline states: "If the defendant used or attempted to use a person less than eighteen years of age to commit the offense or assist in avoiding detection of, or apprehension for, the offense, increase by 2 levels." The application notes explain that: " 'Used or attempted to use' includes directing, commanding, encouraging, intimidating, counseling, training, procuring, recruiting, or soliciting." U.S.S.G. § 3B1.4 cmt. n.1.
Defendant argued that there was no evidence that he manipulated or controlled M.N., or otherwise encouraged M.N. to commit the robbery; in fact, according to defendant, it was M.N.'s idea. Defendant admitted that he wielded the gun but stated that he did so because M.N. was scared.
In response, the government noted that, based on the surveillance video, it appeared that defendant directed M.N. to reach towards the cash register. The government further noted that, according to M.N.'s statement, it was defendant's idea to go into the restaurant to rob it. Once inside, defendant appeared to be the one calling the shots. The government concluded that, given the Seventh Circuit's broad construction of U.S.S.G. § 3B1.4 -that it applies when a defendant's affirmative actions *1071 involved a minor in his criminal activities, as a partner or a subordinate, see United States v. Brazinskas, 458 F.3d 666, 668 (7th Cir. 2006) -the enhancement should apply here.
In reply, defendant indicated that his and M.N.'s post-arrest statements conflicted; that it was not clear from the video that he directed M.N.; and that, in any event, M.N. actively participated. He concluded that the guideline should not apply to an equal partnership but rather when an adult "uses" a child.
This guideline was controversial when adopted, because the Sentencing Commission disregarded Congress's instruction to provide an enhancement for defendants 21 or older who use minors. The Commission instead decided to apply it to defendants of all ages, and the only explanation it gave was that its amendment implemented the congressional directive "in a slightly broader form." See United States v. Ramsey, 237 F.3d 853, 858 (7th Cir. 2001) (quoting 60 Fed. Reg. 25074, 25086 (May 10, 1995) ). The Sixth Circuit found this an improper implementation of the congressional directive, see United States v. Butler, 207 F.3d 839, 849-52 (6th Cir. 2000) (Jones, J., concurring),[1] but the Seventh Circuit in Ramsey disagreed, noting that Congress could have rejected the broader guideline had it disapproved. The Seventh Circuit further adopted a broad construction of the Commission's guideline, as the government noted, holding that it applies where the defendant affirmatively involved a minor in the commission of a crime, as a partner or a subordinate. Ramsey, 237 F.3d at 860. Importantly, though, the court acknowledged that when the defendant and the minor are close in age, the district court could consider granting a downward departure. Id. at 861. In the post- Booker world, departures are obsolete, see United States v. Maxfield, 812 F.3d 1127, 1129 (7th Cir. 2016) (citing United States v. Booker, 543 U.S. 220, 233-34, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) ), but the court's suggestion is helpful in considering how much weight to give the guideline in the § 3553(a) analysis where the defendant and the minor are peers who jointly agreed to commit the crime.[2]
Ultimately, I found it a close call as to whether the enhancement applied here. The Seventh Circuit has held that, when the district court is faced with a difficult guideline issue, it can decline to definitively resolve the dispute if it will not affect the final sentence under § 3553(a). See United States v. Hawkins, 777 F.3d 880, 885 (7th Cir. 2015). I followed that course in the present case.
II. SECTION 3553(a)
A. Sentencing Factors
Section 3553(a) directs the court to consider:
*1072 (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed-
(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the [advisory sentencing guideline range;]
(5) any pertinent policy statement ... issued by the Sentencing Commission[;]
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.
18 U.S.C. § 3553(a).
The court must, after considering these factors, impose a sentence that is "sufficient but not greater than necessary" to satisfy the purposes of sentencing: just punishment, deterrence, protection of the public, and rehabilitation of the defendant. Id. This so-called "parsimony provision" serves as the "overarching" command of the statute. See Kimbrough v. United States, 552 U.S. 85, 101, 128 S.Ct. 558, 169 L.Ed.2d 481 (2007). While the district court must consider the guidelines' recommendation as part of it is analysis, it may not presume that a guideline sentence is reasonable. "To guard against this presumption, a reviewing court must be able to infer that the court, in exercising its discretion, determined that the sentence conformed with the parsimony principle of § 3553(a) [.]" United States v. Armand, 856 F.3d 1142, 1145 (7th Cir. 2017) (internal quote marks omitted).
B. Analysis
1. The Offense
According to surveillance footage and victim statements, defendant entered the Subway location (with M.N. following behind), produced a shotgun with a sawed-off barrel, and pointed it at one of the two employees. Realizing they were being robbed, the employees fled to the restaurant's freezer, where they called police. Defendant and M.N. attempted to open the restaurant cash register but were unable to do so. Defendant then ran to a cooler, took some items from it and, along with the co-actor, ran out of the restaurant.
In a post-arrest statement, defendant indicated that, on the day of the incident, he and M.N. walked past the Subway, and M.N. decided that he wanted to rob it. Defendant stated that he agreed because he was not working and needed the money. In his statement to the PSR writer, defendant elaborated that in the summer of 2016 he was working in a fast food restaurant, making about $400 biweekly. He gave his mother $200 a month to help with the rent and other household expenses. He and his mother were the only two working in a home that they shared with several of defendant's siblings. Despite defendant's mother working two jobs, it was difficult for her to keep up with basic expenses, and the family had a history of evictions. Defendant left his job at the end of the summer after an argument with the manager and thus found himself unable to help his mother with the bills or take care of his own expenses. He looked for other employment but had not been successful at the time of the offense. On the day of the robbery, he encountered M.N., and the two *1073 talked about needing money and ultimately decided to rob a store. Defendant indicated that he regretted putting others in danger with his conduct, something he reiterated during his allocution at sentencing.
2. The Defendant
Defendant was 19 years old at the time of sentencing. His prior record consisted of juvenile adjudications for theft (arising out of an incident in which he stole cigarettes and T-shirts from a car) and making a bomb threat while in school. He had no prior adult convictions.
The PSR and the defense sentencing memorandum discussed the financial problems defendant experienced growing up with his mother and four brothers. He never knew his father. He also experienced academic deficits and attention problems at school, but unfortunately did not receive the assistance necessary to prevent him from falling behind his peers. His mother worked multiple jobs, and as a result he spent a lot of time with his older brothers, who were not positive influences, as also discussed in the defense memo.
Defendant recognized that he needed to obtain his GED and gain some vocational skills. His work record consisted of periods of part-time employment at fast food restaurants.
3. The Sentence
The guidelines recommended 30-37 months with the U.S.S.G. § 3B1.4 enhancement (24-30 months without it) on the robbery count, and the § 924(c) count mandated a consecutive sentence of at least 7 years. The government recommended a sentence of 24 months on the robbery, followed by 84 months on the § 924(c) count. Defendant suggested a sentence of 1 day on the robbery, followed by 84 months on the § 924(c). Under all the circumstances, I found the sentence recommended by the defense sufficient but not greater than necessary to satisfy the purposes of sentencing. See Dean v. United States, --- U.S. ----, 137 S.Ct. 1170, 197 L.Ed.2d 490 (2017).
First, while armed robbery is a very serious offense, traumatic for victims, this crime appeared to fall on the mitigated side. Defendant was in the store for a short period of time, he had a very brief interaction with the employee, he did not order any of the employees to do anything, he did not discharge the gun, no one was hurt, and the defendants got virtually nothing out of it. Further, while he initially ran from the police, to his credit, defendant confessed after he was apprehended, identifying his co-actor, and he accepted responsibility in this court.
I also took into account in assessing culpability defendant's very young age. As the Supreme Court recognized in the Roper line of cases, and as discussed in the research cited in the defense memo, teens have an underdeveloped sense of responsibility and are prone to making impetuous, ill-considered decisions. They are also more susceptible to peer pressure. See Roper v. Simmons, 543 U.S. 551, 569, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005). While no longer technically a juvenile when he committed this offense, defendant was barely an adult, and his maturity level and cognitive functioning were likely at the level of juvenile, as reflected in the discussion of his academic and intellectual levels in the defense sentencing memo. His functioning and that of M.N. were likely comparable. This was not someone who preyed on a younger person to assist him in a criminal endeavor.
Second, the seven-year term provided by the statute sufficed to protect the public, given defendant's limited record. I further noted that defendant would be in his mid-20s when released from this sentence, at a point when he should have gained *1074 some of the maturity he presently lacked. See Miller v. Alabama, 567 U.S. 460, 132 S.Ct. 2455, 2465, 183 L.Ed.2d 407 (2012) (noting that a teen's rashness, proclivity for risk, and inability to assess consequences both lessened his moral culpability and enhanced the prospect that, as the years go by and neurological development occurs, his deficiencies will be reformed).[3]
Third, this sentence sufficed to deter, as defendant had never been to prison before. Generally, a lesser period of imprisonment is required to deter a defendant not previously subject to lengthy incarceration than is necessary to deter a defendant who has already served serious time yet continues to re-offend.[4] See United States v. Qualls, 373 F.Supp.2d 873, 877 (E.D. Wis. 2005).
III. CONCLUSION
For these reasons, I committed defendant to the custody of the Bureau of Prisons for 1 day on the robbery count and 84 months consecutive on the § 924(c) count. This sentence was based on § 3553(a) and would have been the same regardless of the guidelines and my resolution of the objection. I recommended that he be placed at the Oxford correctional institution and that he undergo appropriate psychological evaluation and other programming there. Other terms and conditions of the sentence appear in the judgment.

Judge Jones noted: "We can not conceive of a clearer example than that presented here where the Commission has so flatly ignored a clear Congressional directive. [T]he guideline's 'interpretation' was a direct overruling of an explicit Congressional declaration because it eliminated the age limit, lock, stock and barrel." Id. at 850.

Again, as Judge Jones noted in Butler, "without the age limit that Congress originally authorized, the guideline introduces a whole host of situations where defendants under age twenty one can receive enhancements for engaging in criminal activities with youths of similar age, or perhaps even older than the defendants themselves." 207 F.3d at 851. These types of situations do not involve "the underlying concern that the existence of an age differential allows an older, adult party to influence a minor to engage in wrongful or dangerous behavior." Id.; see, e.g., United States v. Vivit, 214 F.3d 908, 920 (7th Cir. 2000) (applying the enhancement where a doctor directed minor patients to create false attendance sheets as part of his insurance fraud scheme).

The government correctly noted that those same characteristics that lessened defendant's culpability elevated the degree of risk he posed to the public. However, I concluded that with the passage of seven years, and with the assistance of the programming I recommended, that risk could be ameliorated.

Defendant further noted that he was apprehended almost immediately, which increased the deterrent effect. See Paul H. Robinson & John M. Darley, The Role of Deterrence in the Formulation of Criminal Law Rules: At Its Worst When Doing Its Best, 91 Geo. L.J. 949, 954 (2003) ("[A] delay between violation and punishment can dramatically reduce the perceived cost of the violation. Even if the punishment is certain, the more distant it is, the more its weight as a threat will be discounted."); see also Peter J. Henning, Is Deterrence Relevant in Sentencing White-Collar Defendants?, 61 Wayne L. Rev. 27, 40-41 (2015) (indicating that the effectiveness of a deterrent depends on the perceived certainty, severity, and swiftness of punishment, and that studies show certainty of punishment has a greater impact than increasing the level of punishment).