In the

# United States Court of Appeals
## For the Seventh Circuit

Nos. 05-3598 & 05-3661

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

SPRING L. ACOSTA and
CANDACE R. RADERMACHER,

*Defendants-Appellants.*

Appeals from the United States District Court
for the Western District of Wisconsin.
Nos. 05 CR 45 & 05 CR 46—**Barbara B. Crabb**, *Chief Judge.*

ARGUED NOVEMBER 3, 2006—DECIDED FEBRUARY 5, 2007

Before EASTERBROOK, *Chief Judge*, and FLAUM and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* This appeal requires us to consider the extent to which a member of a conspiracy can be held liable under the United States Sentencing Guidelines for the use of a minor where there is no evidence that the defendant personally directed or encouraged the minor in any way. We conclude that the district court misapplied § 3B1.4 of the Guidelines in sentencing Spring Acosta, one of the two defendants in this appeal, when it imposed an enhancement for the use of a minor. We therefore vacate her sentence and remand for

resentencing. The other defendant, Candace Radermacher, argues only that the district court should have declined to apply § 2D1.1(c)(1) of the Guidelines because of that provision's disparity in punishment for similar quantities of powder cocaine and crack cocaine. Because our case-law forecloses this argument, we affirm Radermacher's sentence.

## I.  BACKGROUND

Acosta and Radermacher were both involved in a long-running cocaine conspiracy in and around the Lac Courte Oreilles Reservation (LCO) in Sawyer County, Wisconsin. The LCO Latin Kings gang is a violent organization that committed acts of murder and arson in furtherance of a wide-ranging criminal conspiracy. Acosta ran powder and crack cocaine from Milwaukee to the LCO for resale, and served as secretary for the Latin Kings gang at the Reservation. After undercover agents purchased powder and crack cocaine from her, she confessed to her role in the organization. She also admitted that she knew that two minors, Ray Quagon and Michael Blackdeer, sold cocaine for the Latin Kings. As for Radermacher, a federal investigation revealed that she served as treasurer of the LCO Latin Kings for several years and was involved in all purchases and sales of cocaine, including vast amounts of crack cocaine. Radermacher made multiple statements to this effect in interviews with the Government.

Both Acosta and Radermacher pled guilty to conspiracy to possess cocaine and crack cocaine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 846. The presentence report recommended that Acosta receive an enhancement for the use of a minor in the conspiracy, U.S.S.G. § 3B1.4. She filed a written objection to the report arguing that application of the use of

a minor enhancement was improper, since Radermacher had told the two minors (Quagon and Blackdeer) that they were selling crack for Radermacher and Radermacher's husband, and not the Latin Kings gang. Acosta knew that Quagon and Blackdeer were members of the gang and that they sold crack, but stated that her personal involvement with them was limited. The district court, using the 2004 version of the Guidelines, applied a two-level enhancement under § 3B1.4.

Acosta also argued that she should receive a sentence below the Guidelines range on the basis of coercion or duress under U.S.S.G. § 5K2.12. She testified at her sentencing hearing that her husband Gregorio Acosta, the leader of the LCO Latin Kings, had psychologically and emotionally abused her when she asked to leave the conspiracy. She also suggested that he physically abused her, through violence and through acts such as forcing her to run home on a hot day while pregnant. Acosta testified that even though she continued selling cocaine after Gregorio went to prison, she did so only because she was receiving threats from Gregorio's father. Acosta's mother and uncle also testified at her sentencing that Gregorio abused her. The district court did not address the coercion argument, and sentenced Acosta to 262 months' imprisonment.

The district court calculated a base offense level of 38 for Radermacher, based on the presentence report's finding that her conduct involved 1.5 kilograms or more of cocaine base. Radermacher objected, arguing that the district court should reject the Guidelines' punishment of crack cocaine at a rate one hundred times that of powder cocaine. The district judge stated, "I have some real personal concerns about the differential between crack and powder cocaine, but we do have a Congressional determination that that is the differential that is to be applied, and I think I am bound by that determination."

After considering the factors set out in 18 U.S.C. § 3553(a), the court sentenced Radermacher to 360 months' imprisonment.

## II.  ANALYSIS

After the United States Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), we review sentences imposed by the district court for reasonableness. *See United States v. Brazinskas,* 458 F.3d 666, 667 (2006). Reasonableness is determined by considering the factors set forth in 18 U.S.C. § 3553(a), *Booker*, 543 U.S. at 264, and a sentence within the properly calculated Guidelines range is presumptively reasonable. *See United States v. Mykytiuk*, 415 F.3d 606 (7th Cir. 2006); *see also Rita v. United States*, 177 Fed. App'x 357 (4th Cir. 2006), *cert. granted*, 75 U.S.L.W. 3243 (U.S. Nov. 3, 2006) (No. 06-5754) (grant of certiorari on question whether a sentence within Guidelines range is entitled to presumption of reasonableness); *United States v. Gama-Gonzalez*, 469 F.3d 1109, 1111 (7th Cir. 2006). We review the district court's application of the Guidelines de novo. *United States v. Romero*, 469 F.3d 1139, 1147 (7th Cir. 2006).

### A.  Spring Acosta's Sentence

#### 1.  Enhancement for Use of a Minor

Acosta first argues that the district court erred by applying a two-level enhancement for using a minor in the commission of the offense. Section 3B1.4 of the Guidelines provides that "[i]f the defendant used or attempted to use a person less than eighteen years of age to commit the offense or assist in avoiding detection of, or apprehension for, the offense, increase by 2 levels." The first application note to that section states that "'used or

attempted to use' includes directing, commanding, encouraging, intimidating, counseling, training, procuring, recruiting, or soliciting."

The circuits are divided on the meaning of the term "use" in § 3B1.4. We have observed that a "defendant 'used minors in the commission of his crimes' if his affirmative actions involved minors in his criminal activities." *United States v. Ramsey*, 237 F.3d 853, 859 (7th Cir. 2001) (quoting *United States v. Vivit*, 214 F.3d 908, 920 (7th Cir. 2000)). In *Ramsey*, we affirmed the sentencing court's application of the enhancement for use of a minor where the defendant had directed a minor to sell crack cocaine. *Id.* at 860-61. Four circuits have agreed that the enhancement applies only when the defendant by some affirmative act helps to involve the minor in the criminal enterprise. *See United States v. Pojilenko*, 416 F.3d 243, 247 (3d Cir. 2005); *United States v. Suitor*, 253 F.3d 1206, 1210 (10th Cir. 2001); *United States v. Parker*, 241 F.3d 1114, 1120-21 (9th Cir. 2001); *United States v. Butler*, 207 F.3d 839, 849 (6th Cir. 2000).[1]

In contrast, three circuits take the position that an enhancement under § 3B1.4 is warranted where, although the defendant did not personally engage a minor, he could "reasonably foresee" a co-conspirator's use of a minor. *See United States v. Lewis*, 386 F.3d 475, 479-80 (2d Cir. 2004); *United States v. McClain,* 252 F.3d 1279, 1287-88 (11th Cir. 2001); *United States v. Patrick*, 248 F.3d 11, 27-28 (1st Cir. 2001). These circuits define "use" in § 3B1.4 by

---

[1] Complicating matters somewhat, we are at odds with these circuits on the question of what exactly *constitutes* an affirmative act, *see Ramsey*, 237 F.3d at 859 (pointing out difference), but that difference is immaterial to this appeal because the government does not argue that Acosta's affirmative acts involved minors.

reference to § 1B1.3(a), a general application provision which provides: "Unless otherwise specified, . . . adjustments in Chapter Three[ ] shall be determined on the basis of . . . all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." Although they do not all explicitly mention the decision, each of these cases is an extension of the Supreme Court's ruling in *Pinkerton v. United States*, 328 U.S. 640 (1946), in which the Court held that a defendant is liable for the reasonably foreseeable acts of his co-conspirators done in furtherance of the conspiracy.

Acosta was undeniably aware of the minors' participation, but there is no evidence that she independently directed or encouraged Quagon and Blackdeer, or that she played any role in bringing them into the criminal enterprise. Indeed, at argument, the government conceded that Acosta did not "direct[ ], command[ ], encourage[ ]," or do any other act toward the minors that is spelled out in application note one of § 3B1.4. The parties therefore agree that if we side with Acosta, who asks us to continue following the majority "affirmative act" rule, the enhancement does not apply. And if we side with the government, which urges us to adopt the minority "reasonably foreseeable" test, it does.

Among our fellow circuits taking the "affirmative act" position, only the Third has explicitly rejected the reasonably foreseeable test. In *Pojilenko*, 416 F.3d at 248, that court, citing the Fourth Circuit's decision in *United States v. Moore*, 29 F.3d 175, 178 (4th Cir. 1994) (discussing an enhancement based on § 3B1.3 for abusing a position of trust), reasoned that application of *Pinkerton* liability to § 3B1.4 would conflict with the intention of the Sentencing Commission as evidenced by the general structure of Chapter 3, Part B of the Guidelines. *See Pojilenko*, 416 F.3d at 248-49. The court noted that "Part B permits sentencing adjustments based on . . . whether a particular

defendant was an organizer, leader, manager or supervisor of a group criminal activity," and concluded by quoting the Fourth Circuit's holding in *Moore*:

> These roles in the offense provisions were designed to permit sentencing judges to make individualized distinctions among defendants engaged in a criminal enterprise. By their very nature, the role in the offense adjustments cannot be based upon the actions of co-conspirators; for example, a defendant who was not the organizer of criminal activity could not receive a role enhancement merely because it was reasonably foreseeable that a co-conspirator would organize a criminal scheme.

*Pojilenko*, 416 F.3d at 248 (quoting *Moore*, 29 F.3d at 179) (brackets omitted). As for reliance on § 1B1.3(a), the *Pojilenko* court concluded that the circuits that use the "reasonably foreseeable" test have ignored the words, "[u]nless otherwise specified," which precede § 1B1.3(a)'s command to impute to defendants all reasonably foreseeable acts by co-conspirators. Section 3B1.4 *does* otherwise specify, the court stated; by its terms, it applies only if "*the defendant* used or attempted to use" a minor in the commission of the offense (emphasis added). *Pojilenko*, 416 F.3d at 248.

We find the Third Circuit's reasoning persuasive. *Pinkerton* liability makes no sense in the context of the individualized enhancements set out in section 3B of the Guidelines, which seek to punish the particular behavior of individual members of a conspiracy. Indeed, the section's introductory note states that the part "provides adjustments to the offense level based upon the role *the defendant* played in committing the offense" (emphasis added). The Government was unable to identify any case in which courts have applied *Pinkerton* principles to the other enhancements listed in Part B of Chapter 3 of the

Guidelines. Since Acosta did not personally "use" a minor in committing the offense, the district court's decision to apply this enhancement must be vacated.

### 2. Coercion and Duress

Acosta next argues that the district court should have lowered her sentence on the basis of coercion and duress; at sentencing, the court did not mention her argument on this point. We find no error. In *United States v. Cunningham*, 429 F.3d 673, 678 (7th Cir. 2005), we observed that "[a] sentencing judge has no more duty than we appellate judges do to discuss every argument made by a litigant; arguments clearly without merit can, and for the sake of judicial economy should, be passed over in silence." We further observed that a "judge's failure to discuss an immaterial or insubstantial dispute relating to the proper sentence would be at worst a harmless error." *Id.* at 679. In *Cunningham*, we ultimately reversed and remanded for resentencing on the basis of the judge's silence on an important argument, noting:

> We cannot have much confidence in the judge's considered attention to the factors in this case, when he passed over in silence the principal argument made by the defendant even though the argument was not so weak as not to merit discussion, as it would have been if anyone acquainted with the facts would have known without being told why the judge had not accepted the argument.

*Id.* The argument ignored in *Cunningham* was that the defendant should receive a sentence below the Guidelines range because of his long history of severe psychiatric problems. *Id.* at 677-78. The defendant's attorneys had

produced substantial evidence of his long-standing psychiatric illness. *Id.*

But Acosta's point about coercion was not her principal argument; and, more fundamentally, the contention was weak in light of all the evidence that she willingly participated in the drug conspiracy. She was not a bit player in the LCO Latin Kings gang, but rather worked as an officer with substantial responsibilities. Her participation was not limited to a few acts but rather took place, uninterrupted, over a period of years. She continued her work even after Gregorio, her alleged manipulator, was imprisoned. She has provided no real evidence of coercion outside of her own self-serving testimony. Acosta's mother's testimony was simply that Gregorio was abusive, but not that the abuse was directed at forcing her to remain a part of the drug conspiracy. In short, this is not one of the rare cases where a sentence within a properly calculated Guidelines range was unreasonable. *See United States v. Cardenas*, 445 F.3d 1091, 1094-95 (8th Cir. 2006). If there was any coercion, we are unpersuaded that it was sufficient to warrant a lower sentence. Any error in failing to mention the coercion argument was therefore harmless. *See Cunningham*, 429 F.3d at 678.

**B.  Candace Radermacher's Sentence**

Radermacher raises only one argument on appeal: that the district court should not have applied U.S.S.G. § 2D1.1(c), which sets out a punishment schedule that treats one gram of crack cocaine the same as one hundred grams of powder cocaine. But we have already held that a district court does not err by applying § 2D1.1(c). *United States v. Gipson*, 425 F.3d 335 (7th Cir. 2005) (per curiam). Our caselaw compels us to reject this argument.

### III.  CONCLUSION

Spring Acosta's sentence is VACATED. Her case is REMANDED  for further proceedings consistent with this opinion. The judgment of the district court as to Candace Radermacher is AFFIRMED.

A true Copy:

     Teste:

 

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*