In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-2500

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DAVID ENGLAND,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Western Division.
No. 04 CR 50068—**Philip G. Reinhard,** *Judge.*

ARGUED FEBRUARY 19, 2010—DECIDED MAY 6, 2010

Before POSNER, FLAUM, and WOOD, *Circuit Judges.*

FLAUM, *Circuit Judge.* This is the third time we con-
sider David England's appeal of his sentence from his
January 6, 2006 conviction. In 2006, England was con-
victed of possession of a firearm as a felon in violation of
18 U.S.C. § 922(g)(1) (Count I), attempting to persuade
a witness to provide a false alibi for him in violation of
18 U.S.C. § 1512(b)(1) (Count II), attempting to cause
a witness to conceal evidence in violation of 18 U.S.C.

§ 1512(b)(2)(B) (Count III), and threatening physical force against a witness to influence his testimony in violation of 18 U.S.C. § 1512(a)(2) (Count IV). We have reversed England's sentence for Count IV on procedural errors twice. Because the third sentencing hearing did not suffer from the same procedural errors as the prior two, and because England's sentence is substantively reasonable, we now affirm.

Initially, England was charged with being a felon in possession of a firearm when he allegedly broke a car window with the butt of a gun on September 15, 2004. After the initial incident, England engaged in a series of behaviors that earned him three more charges, all relating to obstruction of justice. First, while in custody on the initial charge, England called his sister, Dawn Bull, and asked her to move and cover the car involved in the incident. Then, he called Dawn's husband, Robert Bull, and told Bull to not let anyone use the car. On September 26, 2004, after moving the car, England's mother and Dawn found a blue duffel bag in the engine compartment. They flagged down a police officer who removed the bag and found a bloodied gun inside. The DNA on the gun matched England. When England learned of the discovery of the gun, he became concerned that his mother and sister were cooperating with the police. England called Robert Bull and told him to make sure that his sister and mother "don't get out o' hand" and to "control them women." Later, England asked his sister to corroborate his alibi, saying that he did not "understand why a . . . couple of my family members can't . . . recognize that they were up there at

the Barnes and Noble that particular day, and they seen me up there." Dawn refused and England's behavior escalated even further. On December 15, 2004, England learned that Robert Bull was cooperating with the police. England could not call Robert directly because Robert had blocked his calls. To circumvent this block, England called his father and told his father that he would "put some bullets in somebody's head" and asked his father to talk to Robert "man to man." On December 27, 2004, England asked his father to relay a message to Robert Bull that if he "shows up to court, when I walk outta prison in fifteen years, I'm 'onna fuckin' murder his motherfuckin' ass."

England represented himself during his three-day trial. With respect to Count IV, threatening physical force against a witness in order to influence his testimony, England's father testified that he never relayed the threats to Robert Bull. Robert Bull also testified that England never directly threatened him and that he only learned of the threats through the government. On January 6, 2006, the jury convicted England on all four counts.

At the initial sentencing, Count IV emerged as the main contested issue because it was not clear which guideline section applied to the charge of threatening physical force against a witness. The presentence investigation report recommended that the district court apply U.S.S.G. § 2A2.1, which covers "Assault with Intent to Commit Murder; Attempted Murder" and carries a base offense level of 33. The district court asked the

parties to brief the question of whether U.S.S.G. § 2J1.2, which addresses "Obstruction of Justice" and carries a base offense level of 22, was a better fit with the conduct charged in Count IV. After both parties briefed the issue, the district court, relying on the statutory index in Appendix A of the Guidelines, found that § 2A2.1 was the appropriate guideline because the Appendix did not list § 2J1.2 as a possible guideline for a violation of 18 U.S.C. § 1512(a). The district court acknowledged that the conduct generally covered by § 2A2.1 did not align with the conduct involved in Count IV. However, it found that our holding in *United States v. Lanas*, 324 F.3d 894, 904 (7th Cir. 2003), required it to "apply the offense guidelines referenced in the statutory index to the statute of conviction" unless the case fell within a limited exception, which it did not. England's total advisory guideline range using § 2A2.1 for Count IV was 210 months to 262 months. At the sentencing hearing, England presented evidence in an effort to persuade the district court that a shorter sentence was warranted. Nevertheless, the court sentenced England to 262 months, the upper limit of the advisory guideline range.

England appealed his conviction and sentence. We affirmed England's conviction and vacated his sentence. We remanded for resentencing because we found that the absence of guideline § 2J1.2 from the statutory index was likely the result of a "pernicious scrivener's error." *United States v. England*, 507 F.3d 581, 591 (7th Cir. 2007) (*England I*). Considering the legislative history of 18 U.S.C. § 1512(a), we reasoned that the error likely

occurred because the Sentencing Commission did not amend the guidelines to match the statutory amendments Congress had made to 18 U.S.C. § 1512(a) in 2002. *Id.* at 591-92. In our instructions for remand, we held that the district court was correct to apply guideline § 2A2.1 because "[r]ather than tinker with the Guidelines sections listed in the statutory index, the district court must typically begin with the offense guideline referenced in the Statutory Index for the statute of conviction." *Id.* at 590. However, we found that this scrivener's error might lead to a disparity among defendants with similar records who have been found guilty of similar behavior because this scheme punished a threat at the same level as an attempted murder. *Id.* at 592. Because the district court did not consider this possible disparity in its initial § 3553(a)(6) analysis, we remanded for resentencing so the district court could properly take this disparity into account. We did not pass any judgment on the reasonableness of the sentence.

Following our decision in *England I*, the United States Sentencing Commission proposed a technical amendment adding guideline § 2J1.2 to the statutory index for convictions under § 1512(a). *See* Sentencing Guidelines for United States Courts, 73 Fed. Reg. 4936 (Jan. 28, 2008). Congress approved these guidelines in May 2008. *See* Sentencing Guidelines for the United States Courts, 73 Fed. Reg. 26,924, 26,936 (May 9, 2008). The Sentencing Commission explained that this amendment "adds a reference to § 2J1.2 (Obstruction of Justice) for a violation of 18 U.S.C. § 1512(a) to reflect the broad range of

obstructive conduct, including the use of physical force against a witness, covered by the subsection." *Id.*

At the re-sentencing hearing following *England I*, the district court properly applied § 2A2.1 in calculating the advisory guideline range and then turned to a reconsideration of the § 3553(a) factors, with a special focus on subsection (a)(6). In the new § 3553(a) analysis, the district court considered all the evidence and argument from the original sentencing hearing and the Sentencing Commission's proposed amendment to the statutory index. The district court found that nature and circumstances of the offense were aggravated due to the violent nature of the conduct charged in Count I and England's obstructive behavior. Then, based on findings of a forensic psychologist that the government presented for sentencing purposes, the district court also found that England would likely remain violent and confrontational. In conjunction with the psychological finding, the court found that England was "a person who can be dangerous, especially if angry," and a person willing to go "beyond mere threats." Taking these factors together, the district court concluded that England needed a substantial sentence to deter him from letting his anger get the best of him and because the public needed to be protected from England. Turning to the § 3553(a)(6) analysis, the district court made it clear that it was balancing its consideration of unwarranted sentencing disparity under subsection (a)(6) with the other factors listed in § 3553(a). It also stated that it could not conduct a full subsection (a)(6) analysis because the parties did not submit evidence of what sentences defendants

convicted of similar crimes received. Conducting what subsection (a)(6) analysis it could, the district court found that, in light of the seriousness of the England's conduct, as well as his psychological characteristics and violent past, the defendant was "more in line with a person who might attempt to murder someone" than the typical offender who obstructs justice. The court expressed the view that, had England been out on bond, he would have tried to harm a witness and he would have used whatever degree of force was necessary to avoid the charges against him. Balancing all of the § 3553(a) factors, including subsection (a)(6), the court determined that a sentence within the advisory guideline range of 210 to 262 months was reasonable and just. The court also stated that if the lower guideline range under § 2J1.2 was applicable, the court would be inclined to vary his sentence upward. Accordingly, the court sentenced England to a total sentence of imprisonment of 210 months, the low end of the advisory range under § 2A2.1.

England appealed the district court's sentence for a second time on the ground that the sentence was substantively unreasonable. We vacated the sentence for a second time based on a procedural error. *United States v. England*, 555 F.3d 616 (7th Cir. 2009) (*England II*). In *England II*, we found that the district court's analysis of the § 3553(a) factors was more than adequate. *Id.* at 621. We also agreed with the district court's statement that it could not conduct a full subsection (a)(6) analysis because the parties had not submitted evidence of sentences received by defendants with similar records who had been found guilty of similar conduct. *Id.* However, we remanded for re-sentencing based on the court's factual

finding that England was "more in line with a person who might attempt to murder someone" than the typical offender who obstructs justice. We held that this finding of the district court was not supported by reliable evidence. In reversing, we provided the district court with clear instructions that it "need not repeat [the § 3553(a)] analysis at resentencing; it can adopt the § 3553(a) findings arrived at during the June 2, 2008 hearing. We only require that the district court make its sentencing determination without reliance on a finding that England would have attempted murder if out on bond unless further evidence is adduced which would justify such a conclusion." *Id.* at 623.

At the third sentencing hearing, which is at issue in this appeal, the district court did precisely what we instructed in *England II*. The district court followed our instruction and adopted the § 3553(a) analysis from the second sentencing hearing completely for the purpose of the third sentencing hearing. Then, the district court turned to the issue of whether it could conclude that England would have attempted murder if out on bond. Because the government did not present additional evidence on this point, the district court found that it could not determine that England would have attempted murder. Without relying on this finding from the second sentencing hearing, the district court still determined that a sentence of 210 months was appropriate in this case. In coming to this conclusion, the district court focused on England's violent temper, as documented by the report of the forensic psychologist, his history of violent assaults, and the violent nature of

the conduct for which he was convicted in Count I (brandishing the weapon and smashing a car window with the weapon).

We review a district court's sentencing decision for reasonableness under an abuse of discretion standard. *United States v. Omole*, 523 F.3d 691, 696 (7th Cir. 2008). First, we address whether the court made a procedural error, then we turn to consider the substantive reasonableness of the sentence. *United States v. Carter*, 530 F.3d 565, 577 (7th Cir. 2008). We have never reached the substantive reasonableness of England's sentence. In *England II*, we explicitly stated that we were not passing judgment on the reasonableness of the sentence, which we said "very well may be reasonable." 555 F.3d at 623. In the third sentencing hearing, the district court corrected the procedural errors from the first two sentencing hearings. Now we are left only to consider the substantive reasonableness of the sentence.

The sentence imposed by the district court is lengthy, but it is not substantively unreasonable. The district court properly calculated the guideline range at the time of sentencing. The district court then considered the sentencing disparities that could arise from the possible scrivener's error that equated violations of 18 U.S.C. § 1512(a) only with the attempted-murder guideline rather than the obstruction-of-justice guideline. Although there was confusion in the second sentencing hearing about the district court's reliance on a finding that England would have attempted murder had he not been incarcerated, the district court cleared up that issue at

the third sentencing hearing by explicitly stating that it was not relying on that finding. The district court carefully considered all of the sentencing factors under § 3553(a), including England's conduct and demeanor through the trial and three sentencing hearings. Taking all of these factors together, the district court determined that England's conduct warranted the substantial sentence of 210 months. Our review of the reasonableness of a sentence is necessarily a deferential one. Finding no procedural error and no abuse of discretion, we find that this sentence was reasonable and AFFIRM the district court's decision to sentence England to 210 months.