In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-3314

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

VINCENTE RAMIREZ-MENDOZA,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 10-Cr-175—**Rudolph T. Randa**, *Judge.*

ARGUED MARCH 29, 2012—DECIDED JUNE 8, 2012

Before KANNE, ROVNER, and WILLIAMS, *Circuit Judges.*

KANNE, *Circuit Judge.* Facing charges of conspiracy to kidnap, unlawful possession of a firearm in further-ance of a crime of violence, and conspiracy to distribute marijuana, Vincente Ramirez-Mendoza agreed to plead guilty solely to the marijuana-conspiracy charge. The district court sentenced Ramirez-Mendoza to 144 months' imprisonment. Ramirez-Mendoza now challenges that sentence in part by arguing that the district

court insufficiently considered non-frivolous arguments in mitigation. We agree and thus, remand for resentencing.

## I. BACKGROUND

Vincente Ramirez-Mendoza was part of a large-scale drug trafficking organization that distributed marijuana in and around Chicago and Milwaukee. In April or May 2010, Roberto Vizcaino-Ortiz, a social acquaintance of Ramirez-Mendoza, introduced him to Hector Vizcaino-Ortiz, Roberto's brother. Shortly after their initial meeting, Ramirez-Mendoza agreed to act as a middleman for marijuana transactions between Hector and Jose Rodriguez, a marijuana supplier. That is, Ramirez-Mendoza arranged for Hector to purchase marijuana from Rodriguez on consignment for which Ramirez-Mendoza was paid a token commission. This arrangement continued until approximately August 2010, when Hector stopped paying Rodriguez for previously purchased marijuana. That missed payment amounted to somewhere between $30,000 (Ramirez-Mendoza's estimate) and $75,000 (the presentence report's (PSR) estimate).

Predictably, Rodriguez demanded payment, and according to Ramirez-Mendoza, Rodriguez pressured him to collect from Hector. When Ramirez-Mendoza's calls to Hector went unanswered, Rodriguez apparently suggested that Ramirez-Mendoza call Roberto to demand payment on Hector's debt. Roberto answered Ramirez-Mendoza's calls but refused or was unable to bail out his brother. Undeterred, Ramirez-Mendoza and perhaps one or more associates visited Roberto at work four or

five times in hopes of tracking down Hector. Through this all, Ramirez-Mendoza maintains that he only called on Hector and Roberto because Rodriguez threatened injury to Ramirez-Mendoza's family if he failed to help Rodriguez secure payment.

Rodriguez's demands for payment came to a head on August 27, 2010. That morning, two men assaulted Roberto in Milwaukee, dragged him into a van, and eventually transported him to a house on South Sacramento Avenue in Chicago where he was bound to a chair with duct tape and flex-cuffs. Roberto reported that the kidnappers carried firearms during the ordeal and shocked him with an electric cattle prod. Roberto's captors also forced him to make phone calls to family members seeking the money his brother Hector owed Rodriguez. Fortunately, Roberto escaped the next day. A subsequent search of the Sacramento Avenue house revealed a pair of boots, later identified as Roberto's, which were duct taped to the legs of a chair found in the basement.

Although it is undisputed that Ramirez-Mendoza joined the kidnappers on August 27, the government and Ramirez-Mendoza disagree about his role in Roberto's kidnapping. Ramirez-Mendoza principally contends that he was also held captive and tortured at the same time as Roberto. To bolster his claim, Ramirez-Mendoza points to a second chair found in the Sacramento Avenue house that also contained remnants of duct tape—evidence that supposedly proves that Ramirez-Mendoza was forcibly restrained. Ramirez-Mendoza claims that his

cousin eventually freed him. The government, of course, disputes Ramirez-Mendoza's story and claims instead that Ramirez-Mendoza played a role in the kidnapping. As evidence, the government collected cell-phone tower data, which shows that Ramirez-Mendoza's phone—and presumably Ramirez-Mendoza himself—traveled from Chicago to Milwaukee on the morning of August 27, and then back to Chicago (near the Sacramento Avenue house) from Milwaukee later that same day. This itinerary is consistent with the theory that Ramriez-Mendoza traveled to Milwaukee to kidnap Roberto, and then drove back to Chicago where Roberto was held captive. And perhaps most importantly, the government points out that Ramirez-Mendoza continued to lean on Roberto and Roberto's relatives for payment even after Roberto escaped.

During the subsequent investigation, detectives requested that Roberto place a recorded phone call to Ramirez-Mendoza. Roberto asked Ramirez-Mendoza to leave him alone and that it was not his obligation to pay his brother's debts. Ramirez-Mendoza responded that "it's not my doing" and "[i]t's not coming from me brother . . . you know what they did to me." Ramirez-Mendoza was arrested on September 8, 2010, for his role in Roberto's kidnapping and the Rodriguez marijuana-distribution conspiracy.

On April 12, 2011, the government filed a second superseding indictment charging Ramirez-Mendoza with: (1) conspiracy to commit kidnapping, in violation of 18 U.S.C. § 1201(a); (2) possession of a firearm in furtherance of

a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(i); and (3) conspiracy to distribute 100 kilograms or more of marijuana, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B). On June 23, Ramirez-Mendoza pled guilty to count three, the drug-conspiracy charge. An attachment (Attachment A) to the written plea agreement served as the factual basis for the plea. Attachment A provides, in part, that large-scale drug trafficking organizations—such as the organization to which Ramirez-Mendoza belonged—often use violence against those who fail to pay drug debts or as a means to otherwise maintain control over the organization. At the sentencing hearing, Ramirez-Mendoza's counsel timely objected to this portion of Attachment A by saying that Ramirez-Mendoza "did not necessarily know some of those facts"—meaning that Ramirez-Mendoza was unaware that violence could be used in connection with the conspiracy.

For the quantity of marijuana at issue, the PSR initially calculated Ramirez-Mendoza's base-level offense as 26. From there, the PSR recommended a two-level enhancement for possession of a firearm, *see* U.S.S.G. § 2D1.1(b)(1), a two-level enhancement for use of violence, *see* U.S.S.G. § 2D1.1(b)(2), and a three-level adjustment for acceptance of responsibility, *see* U.S.S.G. § 3E1.1(a)-(b). Thus, the PSR recommended a sentencing range of 70 to 87 months' imprisonment based on a total criminal offense level of 27 and a Category I criminal history. Notably, the district court accepted the PSR's recommendation, over the government's objection, against applying a two-level enhancement under U.S.S.G. § 2D1.1(b)(12) for maintaining

a premises for manufacturing or storing marijuana. The district court ultimately departed from the guidelines range and imposed a sentence of 144 months' imprisonment.

## II. ANALYSIS

We review Ramirez-Mendoza's sentence for reasonableness under an abuse of discretion standard. *United States v. England*, 604 F.3d 460, 464 (7th Cir. 2010). First, we determine whether the sentencing court committed procedural error—such errors include, for example, an improperly calculated guidelines range or the failure to consider the 18 U.S.C. § 3553(a) factors. *United States v. Scott*, 555 F.3d 605, 608 (7th Cir. 2009). If there was no procedural error, we then review the sentence for substantive reasonableness. *Id.*

On appeal, Ramirez-Mendoza contends that the district court committed three errors in rendering an above-guidelines sentence, although we have grouped the first two for ease of analysis. First, Ramirez-Mendoza argues that the sentencing court failed to adequately address two of his arguments: (1) whether Ramirez-Mendoza was coerced into participating in the kidnapping; and (2) whether Roberto's kidnapping was foreseeable. Second, Ramirez-Mendoza argues that the length of his sentence was substantively unreasonable.

*A. Procedural Error*

We begin with the oft-cited principle that the sentencing court "must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *Gall v. United States*, 552 U.S. 38, 50 (2007); *see also United States v. Garcia-Oliveros*, 639 F.3d 380, 381 (7th Cir. 2011) (per curiam); ("A sentencing court commits procedural error by not adequately explaining its choice of sentence."). But in applying *Gall*, we have carefully noted that a sentencing judge "need not belabor the obvious," *United States v. Gary*, 613 F.3d 706, 709 (7th Cir. 2010), nor must the sentencing judge always address "stock" arguments made in mitigation, *United States v. Tahzib*, 513 F.3d 692, 695 (7th Cir. 2008); *Gary*, 613 F.3d at 709 ("'[S]tock' arguments in mitigation often can be rejected with little or even no explanation."). "Stock" arguments have been previously defined as near-meritless arguments that a sentencing court frequently encounters. *See, e.g.*, *United States v. Mendoza*, 576 F.3d 711, 722 (7th Cir. 2009); *Tahzib*, 513 F.3d at 695.

With that, we turn to the question of whether the district court adequately addressed two of Ramirez-Mendoza's principal arguments. First, Ramirez-Mendoza argues that the district court ignored his claim that he was coerced into participating in the kidnapping, and thus, whether he was entitled to a reduction to his calculated criminal offense level. *See* U.S.S.G. § 5K2.12 ("If the defendant committed the offense because of serious coercion, blackmail or duress, under circumstances not amounting to

a complete defense, the court may depart downward."). We agree. In his sentencing memorandum, Ramirez-Mendoza offered evidence suggesting that he was also kidnapped or, at a minimum, subjected to significant pressure to collect Hector's debt. For example, Ramirez-Mendoza claims that Rodriguez threatened harm to Ramirez-Mendoza's family if he did not help collect the debt. Ramirez-Mendoza also points to his statement during the recorded phone call with Roberto—"[i]t's not coming from me brother . . . you know what they did to me"—which could be evidence of coercion. There is also the matter of the duct tape found on a second chair in the South Sacramento house and the simple fact that Ramirez-Mendoza consistently and forcefully called on Roberto to answer for the debt, even though Ramirez-Mendoza and Roberto were social acquaintances. All this is to say that Ramirez-Mendoza's coercion argument is more than a mere stock argument. Accordingly, the district court should have addressed it at the sentencing hearing.

The government concedes that the district court never expressly addressed Ramirez-Mendoza's coercion argument; rather, the government contends that the district court implicitly rejected the argument by calling into question Ramirez-Mendoza's credibility—but in a different context. The district court's intimation without confronting the coercion argument head-on is simply not enough for non-frivolous arguments. *See United States v. Schroeder*, 536 F.3d 746, 756 (7th Cir. 2008). Alternatively, the government suggests that any error by the district court is harmless. *See United States v. Acosta*,

474 F.3d 999, 1004 (7th Cir. 2007). *Acosta* is inapposite. There, we noted that the defendant's coercion argument was meritless, entirely premised on the defendant's self-serving testimony, and not even a principal focus at her sentencing hearing. *Id.* The exact opposite is true of Ramirez-Mendoza's argument. Additionally, harmless error plays a role in sentencing when a district court does not discuss an immaterial sentencing argument. *Id.* at 1003 (*citing United States v. Cunningham*, 429 F.3d 673, 678 (7th Cir. 2005)). As discussed, Ramirez-Mendoza's argument is not frivolous, and thus, it cannot be swept away through harmless error.

Ultimately, the government may dispute the relevance or truth of the coercion evidence, and the government might be correct in arguing that Ramirez-Mendoza created this coercion story out of whole cloth. We take no view on the veracity of Ramirez-Mendoza's theory, except to say that it was a principal argument worthy of the district court's attention. *See Cunningham*, 429 F.3d at 679 ("A judge who fails to mention a ground of recognized legal merit (provided it has a factual basis) is likely to have committed an error or oversight."). This argument was neither meritless nor one frequently encountered by sentencing courts. It deserved the attention of the district court.

Ramirez-Mendoza also claims that the district court failed to adequately consider whether his co-conspirators' actions should be charged to him as relevant conduct. *See* U.S.S.G. § 1B1.3(a)(1)(B) (Generally, a defendant can be held liable for "all reasonably foreseeable acts and

omissions of others in furtherance of the jointly under-
taken criminal activity . . . .”). Here, the district court
enhanced Ramirez-Mendoza’s sentence because
the kidnapping and use of firearms by his co-conspirators
was reasonably foreseeable to him, and thus, relevant
for purposes of crafting his sentence. But, Ramirez-
Mendoza faults the district court for improperly relying
on disputed evidence. Specifically, Ramirez-Mendoza
highlights his objection to one paragraph of Attachment
A to the plea agreement, which indicated that Ramirez-
Mendoza was aware of the violence drug trafficking
organizations typically use to collect drug debts.

On appeal, Ramirez-Mendoza claims that the
district court improperly relied upon the objected-to
paragraph in Attachment A in holding that his co-conspira-
tors’ violent acts were foreseeable. Assuming this is
true, Ramirez-Mendoza argues that the district court
never sufficiently explained why his co-conspirators’
violence should be charged to him as relevant conduct.
We generally agree with Ramirez-Mendoza that the district
court improperly mentioned his “admissions,”
which presumably is a reference to the objected-to para-
graph in Attachment A. But, the district court also
made an explicit credibility finding on the foreseeability
issue. Specifically, the district court said: “A disassocia-
tion by the defense to these [foreseeability] facts is not
believable . . . given the physical evidence that . . . con-
nect[s] the Defendant to these events. And I’m referring
to the cell phones and other facts that make those argu-
ments relative to disassociation implausible . . . .” (Sent. Tr.
at 53.) Such a credibility finding is exactly the type of find-

ing necessary for a district court to have sufficiently considered a defendant's sentencing argument. Although the district court should have avoided referring to a contested admission, we are satisfied that its brief credibility determination adequately explains the decision to reject Ramirez-Mendoza's foreseeability argument. *See United States v. Williams*, 616 F.3d 685, 694 (7th Cir. 2010) ("Because this explanation demonstrated the court's basis for its reasons, it matters little that the explanation was brief."); *Schroeder*, 536 F.3d at 755 ("A short explanation will suffice where the context and record make clear the reasoning underlying the district court's conclusion.").[1]

## B. Substantive Reasonableness

Because the district court did not address one meritorious argument offered in mitigation, we need not consider whether Ramirez-Mendoza's sentence was substantively

---

[1] We are skeptical that Ramirez-Mendoza's foreseeability argument is worthy of the district court's attention—that is, whether it is something other than a stock argument. Anyone who so much as opens a newspaper must know that large-scale drug conspiracies use violence to maintain territory, ensure payment, and enforce organizational structure. Surely Ramirez-Mendoza had some inkling that Rodriguez would resort to violence if a customer failed to pay a $30,000 or $75,000 debt. That said, we assume without deciding that this is a meritorious claim and instead find that the district court's credibility finding sufficiently explains its choice of sentence.

unreasonable. *See Cunningham*, 429 F.3d at 680. But, we take this opportunity to stress that sentencing judges rightly maintain significant discretion in fashioning an appropriate sentence. It is the sentencing judge that hears evidence and makes credibility determinations, both of which give the judge insights into a case that a cold record simply cannot convey. *Gall*, 552 U.S. at 51-52. Ultimately, given the seriousness and viciousness of the alleged kidnapping, a 144-month sentence may be reasonable, and the sentencing judge is free to reimpose that sentence after adequately considering Ramirez-Mendoza's coercion argument.

## III. CONCLUSION

For the foregoing reasons, we VACATE Ramirez-Mendoza's sentence and REMAND to the district court for resentencing.