NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued December 11, 2012
Decided January 8, 2013

**Before**

WILLIAM J. BAUER, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 11-3869

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Southern District of Illinois. |
| *v.* | No. 11-CR-30077-001-WDS |
| EDWARD LYNN MOSKOP, *Defendant-Appellant.* | William D. Stiehl, *Judge.* |

**O R D E R**

Edward Moskop pleaded guilty to mail fraud and money laundering, 18 U.S.C. §§ 1341, 1957(a), after authorities discovered that he had run a Ponzi scheme for 20 years and stolen more than $1.4 million from 26 victims. The district court calculated a guidelines imprisonment range of 135 to 168 months and imposed concurrent terms totaling 240 months. On appeal Moskop contends that the court failed to address his arguments in mitigation and, consequently, imposed an unreasonable prison sentence. We disagree and affirm the judgment.

Beginning in 1982, Moskop operated Financial Services Moskop & Associates, Inc., in Belleville, Illinois. Through that business he sold insurance policies and investment products to individual clients. In 1990 the former National Association of Securities Dealers

revoked Moskop's license to sell securities after determining that he had converted $30,000 of client funds. For the next 20 years, however, Moskop misrepresented himself as still authorized to sell securities.

During that period Moskop was running a Ponzi scheme and converted more than $2.4 million from clients who believed he was investing their money in securities. Moskop advertised fictitious investment products and deceived his clients about the status of their money by creating false investment receipts and tax statements. He also continued to sell insurance policies, but often pocketed his clients' premium payments instead of sending them to the carriers. When Moskop could not dissuade clients who wanted to liquidate their investment accounts, he made "lulling" payments drawn from funds provided by other clients; those outgoing payments totaled almost $1 million, leaving Moskop with roughly $1.4 million. He used that money to support himself and his family.

Moskop used other strategies besides the lulling payments to avoid detection. Many of his victims were longtime friends and relatives, including his sister. He also targeted elderly clients who were enticed by his promises of safety and high rates of return for their retirement funds. Moskop stole the life savings of many of those victims. The scheme finally fell apart in 2010 when he could not repay two victims who wanted to liquidate their accounts. During the ensuing investigation he disclosed details of the scheme and helped identify all of his victims. He then pleaded guilty to mail fraud and money laundering.

After reviewing the presentence report, the prosecutor submitted a sentencing memorandum arguing that the imprisonment range of 135 to 168 months was too low and recommending a sentence of "not less than . . . twenty years." The prosecutor added that Moskop's victims thought a sentence at the statutory maximum of 30 years (20 years for mail fraud plus a consecutive term of 10 years for money laundering, *see* 18 U.S.C. §§ 1341, 1957(b)(1)), was necessary to provide just punishment. The prosecutor asserted that many of Moskop's victims had suffered financial ruin and severe emotional trauma.

In his own sentencing memorandum, Moskop argued that he should receive a sentence within the guidelines range. He emphasized the statutory directive "to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), and cited a recent case from the same district in which the defendant had received only 87 months after reaped $1.9 million from a Ponzi scheme. Moskop lauded that prosecution, *United States v. Huelsmann*, No. 3:09CR30180-001-GPM (S.D. Ill. Aug. 2, 2010), as the best example to guide the district court's sentencing decision, and tried to distinguish other prosecutions of Ponzi schemes that the government said were more analogous. Moskop also argued that he deserved a guidelines sentence because he had cooperated with investigators and because, at age 64, a

higher sentence would make it impossible for him ever to pay restitution. Finally, Moskop asserted that the court should reject the government's recommendation because, he insisted, a number of upward adjustments in the sentencing guidelines already accounted for much of the conduct underlying the government's proposed increase.

At sentencing, Moskop pressed his arguments that an above-range prison term would create an unwarranted sentence disparity, undervalue his help to investigators in untangling the fraud, and rest on grounds already factored into the guidelines range. In discussing the last point, Moskop noted that the amount of money he stole had determined his base offense level, U.S.S.G. § 2B1.1(b)(1)(I), and complained that his offense level already had been increased further because he had violated securities laws while acting as an investment adviser, *id.* § 2B1.1(b)(18)(A)(iii). With respect to his claim about unwarranted disparities, Moskop discussed the *Huelsmann* case again and also referred to a website called "Ponzi Tracker." That website, he said, showed that two defendants who operated Ponzi schemes in other states and stole millions more than him recently had received sentences of 10 and 20 years. Moskop urged the district court to review those sentences and "other cases that have been handed down . . . around the country." The government countered by calling more than a dozen of Moskop's victims to testify about the harm he had caused.

Before announcing Moskop's sentence, the district court engaged in a lengthy analysis of the § 3553(a) factors. The court began by noting that Moskop had received a reduction in offense level for acceptance of responsibility and had "clearly expressed heartfelt remorse" after getting caught. The court continued, however, that it was unable to identify any other mitigating factor except that Moskop was a good father. And on the aggravating side, the court said, were a number of factors that gave it "great pause": Moskop had continued his fraud for 20 years, targeted vulnerable clients including the elderly and sick, fabricated a variety of phony documents to lull his victims, and repeatedly set out to take the life savings of victims, leaving "literally nothing" for them and the descendants they intended to assist. After hearing from the victims, the court specifically found that Moskop had stolen from a man dying of cancer and convinced a widow living on disability payments to take her deceased husband's pension as a lump sum and give it to him for "investment." The testimony also established, the court added, that Moskop's clients had suffered numerous physical manifestations of emotional harm, and that his uncharged insurance fraud had caused further loss not incorporated into his offense level. With respect to Moskop's argument about an unwarranted sentence disparity, the court discussed *Huelsmann* and noted several distinctions: The Ponzi scheme in that case had lasted only 3 years, the guidelines range was only 70 to 87 months, and the defendant made lulling payments of just $153,000 and did not create false documents to further deceive his victims. Finally, the court found that Moskop's risk of recidivism is "extraordinarily high"

because he continued breaking the law for 20 years after experiencing a "slap on the wrist" when he lost his license to sell securities. The court sentenced Moskop to a total of 20 years—20 years for mail fraud and 10 years for money laundering, to run concurrently—and imposed $1.49 million in restitution.

On appeal Moskop argues that the district court committed procedural error by failing to address four "principal, non-frivolous arguments" in mitigation: his contention that an above-range sentence would create an unwarranted sentence disparity, *see* 18 U.S.C. § 3553(a)(6); his insistence that he provided "extraordinary cooperation" after his scheme was uncovered; his argument that a within-guidelines sentence was necessary to allow him to pay restitution, *see id.* § 3553(a)(7); and his contention that the government's list of aggravating factors already were accounted for in the guidelines range. We reject this characterization of the sentencing hearing.

To begin, the district court squarely addressed Moskop's argument about § 3553(a)(6) and noted the many differences between his case and *Huelsmann*. Moskop complains that the court "failed to understand the point of the argument regarding *Huelsmann*," but the point was clear: Moskop tried to argue that his case was comparable, and the court disagreed. Moskop also contends that the court failed to address the "remainder" of his § 3553(a)(6) argument, apparently a reference to the "Ponzi Tracker" website and his effort to distinguish other Ponzi schemes cited by the government. But district courts need not respond to arguments that lack factual foundation, *United States v. Chapman*, 694 F.3d 908, 913–14 (7th Cir. 2012); *United States v. Ramirez*, 675 F.3d 634, 641 (7th Cir. 2011); *United States v. Diaz*, 533 F.3d 574, 578 (7th Cir. 2008); *United States v. Tahzib*, 513 F.3d 692, 694–95 (7th Cir. 2008); *United States v. Beier*, 490 F.3d 572, 574 (7th Cir. 2007), and Moskop's brief references to unnamed, undescribed cases reported on a website, the content of which he never made available, did not give the district judge a factual foundation to conclude that the court's contemplated sentence would create a disparity with sentences given to other defendants with similar records who engaged in similar conduct, *see* 18 U.S.C. § 3553(a)(6). For that same reason, there was no need for the court to comment on Moskop's assessment of the cases the government said were comparable, since even if they were not, the court still would have been left without a benchmark to compare with Moskop's prison sentence.

The district court also responded to Moskop's argument that his help to investigators warranted a lower sentence. At the beginning of its discussion, the court agreed that Moskop had "expressed heartfelt remorse" after he got caught, but the judge decided that abundant aggravating factors still required an above-range sentence. This response from the court was more than enough, since arguments about acceptance of responsibility, which

defendants make at sentencing as a matter of course, are "stock" contentions that can be rejected without comment. *Tahzib*, 513 F.3d at 695.

The district court did not discuss Moskop's remaining points about restitution and the government's proposed aggravating factors, but for several reasons no response was needed. First, neither can be characterized as an argument in *mitigation*. These are not unique characteristics of the defendant or his crime that possibly could warrant a lower sentence. *See, e.g., United States v. Ramirez-Mendoza*, 683 F.3d 771, 775–76 (7th Cir. 2012) (remanding for resentencing because district court did not address argument that defendant had been coerced into participating in kidnapping); *United States v. Robertson*, 662 F.3d 871, 878–80 (7th Cir. 2011) (court did not address substantial evidence of defendant's genuine rehabilitation); *United States v. Harris*, 567 F.3d 846, 854–55 (7th Cir. 2009) (defendant's significant health problems)*; United States v. Schroeder*, 536 F.3d 746, 755–56 (7th Cir. 2008) (defendant's extraordinary family circumstances); *United States v. Miranda*, 505 F.3d 785, 792–94 (7th Cir. 2007) (defendant's mental illness). The gist of Moskop's restitution argument is that he perpetuated his scheme successfully for so long that now, because of his age, his victims will have no shot at getting restitution if he is required to serve a significant prison term. That contention, which does not remotely resemble a factor in mitigation, did not require a response from the judge. The same is true for Moskop's objections to the government's proposed factors in aggravation, because in opposing those factors he offered no countervailing reasons for a lower sentence.

Apart from the "mitigation" problem, the judge also did not need to respond to Moskop's restitution argument because that contention was not factually supported: Moskop gave the court no reason to think he would be able to pay more restitution if, instead of spending 20 years in prison and being released in his early eighties, he served a guidelines sentence and was released in his late seventies. Additionally, Moskop limited his restitution argument to nine lines in his sentencing memorandum and did not mention it at *all* at the sentencing hearing. We have repeatedly said that contentions raised in such cursory fashion are not "principal" arguments requiring a response from the district court. *See Chapman*, 694 F.3d at 914; *United States v. Martinez*, 650 F.3d 667, 672 (7th Cir. 2011); *United States v. Moreno-Padilla*, 602 F.3d 802, 812 (7th Cir. 2010).

Finally, Moskop's argument that the guidelines already "took into account" all of the aggravating factors raised by the government is meritless. After *United States v. Booker*, 543 U.S. 220 (2005), and *Kimbrough v. United States*, 552 U.S. 85 (2007), district courts may impose sentences outside of the guidelines range based on their own penological philosophies, as long as the sentence is within statutory limits and reasonable. *Vrljicak v. Holder*, 700 F.3d 1060, 1062 (7th Cir. 2012); *United States v. Mount*, 675 F.3d 1052, 1058 (7th Cir. 2012). Under the new sentencing regime, nothing prohibits a district court from deciding that conduct

already incorporated into a defendant's guidelines range warrants an above-range sentence under the factors in § 3553(a). *United States v. Aljabari*, 626 F.3d 940, 951 (7th Cir. 2010). Moreover, Moskop's argument is not even *factually* correct because the government's arguments in aggravation, rather than parroting upward adjustments in the guidelines, focused on three grounds that the Sentencing Commission has encouraged district courts to consider when evaluating the adequacy of a within-range prison term. *See* U.S.S.G. § 2B1.1 cmt. n.19(A)(ii) (sentencing court may consider whether offense "caused or risked substantial non-monetary harm"); *id.* cmt. n.19(A)(iii) (court may evaluate whether offense involved interest or other costs not included in loss calculation); *id.* § 5K2.21 (court may consider uncharged conduct not captured in guidelines range).

Moskop also asserts that his prison sentence is substantively unreasonable "because the district court did not give proper consideration to his arguments in mitigation." But that contention simply repeats his claim of procedural error, *see Ramirez-Mendoza*, 683 F.3d at 775, and as we already have stated, the court said all that was required in response to Moskop's arguments. In any event, Moskop's sentence rests firmly on the factors listed in § 3553(a). *See United States v. Courtland*, 642 F.3d 545, 550 (7th Cir. 2011); *United States v. Wise*, 556 F.3d 629, 632–33 (7th Cir. 2009). As in *United States v. Scott*, 657 F.3d 639, 641 (7th Cir. 2011), a factually similar case, the district court was troubled by several factors setting Moskop's case apart, including the length of time he carried out his scheme and his willingness to take everything from elderly and vulnerable victims. The court's determination that those factors required a sentence above the guidelines range was not an abuse of discretion.

Accordingly, we **AFFIRM** Moskop's sentence.